IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

SHERI GAIL DURHAM,                    )   Civ. No. 08-00342 JMS-LEK
INDIVIDUALLY AND AS NEXT OF           )
FRIEND OF MARISA UMA LAMA             )
DURHAM, MINOR, ET AL.,                )
                                      )
          Plaintiffs,                 )
                                      )
     vs.                              )
                                      )
COUNTY OF MAUI, ET AL.,               )
                                      )
          Defendants.                 )
_____      )

**FINDINGS AND RECOMMENDATION TO DENY THE ESTATE OF MARK ALLEN DURHAM'S PETITION FOR FINDING OF GOOD FAITH SETTLEMENTS**

Before the Court is Plaintiff/Counterclaim Defendant the Estate of Mark Allen Durham's ("the Estate") Petition for Finding of Good Faith Settlements ("Petition"), filed on March 11, 2009.[1]  Defendant Patty Conte ("Conte") filed an Objection to the Petition on March 25, 2009, Defendant County of Maui ("the County") filed its memorandum in opposition on March 25, 2009, and Defendant Ford Motor Company ("Ford") filed its memorandum in opposition on March 27, 2009.  On March 27, 2009, Kapiolani Medical Center for Women & Children and Hawaii Pacific Health (collectively "Kapiolani Defendants") filed a joinder in the County's memorandum in opposition and Conte's objections.  On

_____

[1] Although the Petition states that Sheri Gail Durham was the Administrator of the Estate, the First Amended Complaint, filed on January 26, 2009, noted that Denise Ann Jenkins had replaced Sheri Durham as the Administrator of the Estate.

March 28, 2009, Defendant Maui Windsurfing Vans, Inc. ("Maui Windsurfing") filed a joinder in the County's memorandum in opposition.  On April 2, 2009, Defendants Byron H. Izuka and Byron H. Izuka, M.D., L.L.C. ("Defendant Izuka") filed a joinder in Conte's objections, the County's memorandum in opposition, and Ford's memorandum in opposition.  The Estate filed its reply on April 3, 2009.

This matter came on for hearing on April 16, 2009.  The following counsel appeared at the hearing: John Price, Esq., on behalf of the Estate; Kenneth Chaiken, Esq., Phillip Deaver, Esq., and Sarah M. Love, Esq., on behalf of Plaintiff Sheri Gail Durham, individually and as next friend of Jessica Haley Durham and Marisa Uma Lama Durham, both minors;[2] Laureen Martin, Esq., and Kenneth Robbins, Esq., on behalf of the County; Marilyn Naitoh, Esq., on behalf of Conte; Jerold Matayoshi, Esq., and Howard Grant Law, Esq., on behalf of Ford; Ann Aratani, Esq., on behalf of Maui Windsurfing; Christian Adams, Esq., on behalf of Defendant Izuka; and Malia Schreck, Esq., on behalf of the Kapiolani Defendants.

At the hearing on the Petition, this Court gave the

---

[2] After the hearing on the instant Petition, this Court granted Plaintiff's Motion for Substitution of Party, filed on March 25, 2009, and ordered the substitution of Plaintiff Denise Ann Jenkins, as the Administrator of the Estate of Jessica Haley Durham, in place of Sheri Gail Durham, as Next Friend of Jessica Haley Durham, minor.

parties leave to file supplemental memoranda addressing Texas probate issues.  On April 23, 2009, the Estate filed its supplemental memorandum in support of the Petition.  The County filed its supplemental memorandum in opposition on April 28, 2009.  Ford and Maui Windsurfing each filed a supplemental memorandum in opposition on April 30, 2009.

After careful consideration of the Petition, supporting and opposing memoranda, and the arguments of counsel, this Court HEREBY FINDS AND RECOMMENDS that the Estate's Petition be DENIED for the reasons set forth below.

## **BACKGROUND**

The instant case arises from: 1) a July 26, 2006 automobile collision involving a rented vehicle that Mark Durham was driving and another vehicle driven by Conte; and 2) the medical treatment that Jessica Durham received after the collision.  Mark Durham suffered fatal injuries in the collision. Jessica and Marisa Durham were passengers in the vehicle driven by Mark Durham, their father, and they sustained injuries in the collision.  Jessica Durham died during the pendency of this action.

The instant Petition states that the Estate reached settlement agreements in Texas concerning Marisa's and Jessica's claims against the Estate on November 3, 2008 and June 16, 2008, respectively.  Marisa's claims were settled for $40,000.00,

3

representing the maximum policy limit available to her under Mark Durham's auto insurance.  Jessica's claims were settled for $60,000.00, representing the $40,000.00 policy limit from Mark Durham's auto insurance and the $20,000.00 policy limit from the insurance on the rented vehicle.  In both cases, the Texas court found that the settlements were reasonable, fair, and in the best interests of all parties and the insurers.  Both settlement agreements release the Estate and the insurers from all claims arising out of the incident, except for claims for uninsured/underinsured motorist benefits.[3]  Both were overseen by guardians ad litem appointed to protect Jessica's and Marisa's interests, as well as competent counsel.  In approving the settlements, the Texas court also found that the Estate's liability was uncertain, indefinite, and incapable of satisfactory establishment, as were the nature and extent of Jessica's and Marisa's injuries.  Based on the totality of the circumstances in this case, the Estate seeks a determination of good faith settlement pursuant to Haw. Rev. Stat. § 663-15.5(a).

In her objections, Conte states that the Maui Police Department's investigation of the accident concluded that Mark Durham was at fault.  He failed to stop and yield to Conte's

---

[3] Jessica's settlement agreement also released Maui Windsurfing, which was a co-defendant with Mark Durham's estate. There is, however, pending litigation regarding the validity of Maui Windsurfing's release.

4

right of way.  In addition, he was speeding and had recently used marijuana.  Conte argues that a determination of good faith settlement would extinguish her claims for contribution and indemnity against the Estate and that the settlement amounts for Jessica's and Marisa's claims may not be reasonable reflections of the Estate's proportionate exposure in this case because Mark Durham is primarily responsible for the accident.  Further, the Petition establishes that the settlement amounts were for the limits of the automobile insurance available to Mark Durham, but Conte argues that all insurance coverage available to him should be exhausted before the burden of Jessica's and Marisa's damages is imposed on the defendants in this action.  The defendants, including Conte, could be held liable for an unfair portion of Mark Durham's liability.  Conte therefore argues that the Petition should be denied.  In the alternative, Conte argues that ruling on the Petition should be deferred until the Estate responds to a discovery request that Ford served on March 19, 2009 regarding the financial solvency of the Estate.  Until it is determined whether the Estate has other assets that may be used to satisfy Jessica's and Marisa's claims, the settlements cannot be found to be in good faith.  Conte also argues that the father-daughter relationship between Mark Durham and Jessica and Marisa Durham warrants scrutiny to determine whether there was collusion.

If the Petition is granted, Conte argues that the order granting the Petition could include the following conditions: 1) Mark Durham and/or the Estate be included on the special verdict form for apportionment of liability and damages; 2) Conte not be held jointly and severally liable for damages attributable to Mark Durham; and 3) the total amount of any judgment in favor of Jessica and Marisa will be reduced by the settlement amount or Mark Durham's proportionate liability, whichever is greater. Conte argues that, under Hawaii law, courts have the power to include a settling defendant on a special verdict form. She also notes that Haw. Rev. Stat. § 663-10.9(3) provides that a tortfeasor whose percentage of causative negligence is less than twenty-five percent is only liable for non-economic damages proportionate to her percentage.

In its memorandum in opposition, the County notes that Jessica's and Marisa's claims against the Estate are not part of this litigation. Plaintiffs strategically excluded them from the instant case, presumably because it would have destroyed diversity jurisdiction.[4] Instead, Jessica and Marisa chose to file "friendly lawsuits" against the Estate in a Texas court. None of the defendants, except Maui Windsurfing, had notice of Jessica's and Marisa's Texas actions against the Estate. The

---

[4] Jessica, Marisa, and the Estate were all Texas residents at the time the instant case was filed.

County therefore argues that this district court does not have subject matter jurisdiction over the Texas settlements, although the it does have jurisdiction to determine how the settlements will affect this case.

The settlements provide that they shall be construed according to Texas law.  The County argues that Hawaii law would honor the choice of law provision in the settlement agreements because there is a nexus between the parties and the chosen state.  Further, to the extent that the Estate agreed to be bound by Texas law, it should not be allowed to rely on Hawaii law for a determination of good faith settlement.  Jessica and Marisa should also be precluded from invoking Hawaii law because they agreed to be bound by Texas law and chose to file suit in Texas. The County also emphasizes that Jessica and Marisa are disputing that there was a settlement with Maui Windsurfing.  In seeking the Texas court's assistance they are again seeking to have Texas law applied to the settlements.  This dispute also indicates that there is uncertainty about whether a settlement actually exists and what its terms are.

Even assuming that there are two binding settlements and that Hawaii law applied, the County argues that the settlements are not in good faith.  The County points to the same arguments that Conte makes: the parties' relationship is conducive to collusion; the settlements do not accurately reflect

the Estate's relative degree of fault; and there is insufficient evidence regarding insurance policy limits and the Estate's assets.  The County also argues that, although this is likely to be a costly litigation, the costs will not be increased significantly if the Estate remains as a defendant.

In its memorandum in opposition, Ford states that it joins in and incorporates by reference the County's memorandum in opposition.  In addition to reiterating the arguments raised by the County, Ford argues that Plaintiffs' forum shopping is improper and weighs heavily against a determination of good faith settlement.  In the alternative, Ford requests a forty-five day continuance of the hearing on the Petition so that it can complete discovery regarding, *inter alia*, the financial condition of the Estate.

Ford notes that neither Plaintiffs, nor any of their agents, attorneys, or insurers took steps to preserve the vehicles involved in the collision.  Further, although Ford's October 10, 2008 scheduling conference statement noted that it believed Plaintiffs were involved in another action in Texas involving Maui Windsurfing, and Plaintiffs' counsel was asked about the Texas litigation after the October 20, 2008 scheduling conference, Plaintiffs never disclosed Jessica's and Marisa's Texas actions.  Neither Plaintiffs nor the Estate disclosed the action in their initial disclosures.  In spite of Jessica's and

Marisa's Texas actions, on February 24, 2009, in response to Ford's First Request for Admissions, Plaintiffs denied that their damages were caused or contributed to by Mark Durham and denied that he was negligent.

Ford argues that the Petition is deficient because it does not identify all of the parties to the settlements and it does not state the basis of the settlement. The Petition only refers to the Estate, Marisa, and Jessica, although the settlements themselves state that a number of insurers are also released parties. The Petition only refers generally to insurance policies, but does not include any specific information about the policies. Ford also argues that Texas does not appear to have a good faith settlement statute and therefore this Court should not rely on the Texas court's approval of the settlements. Ford also raises the same argues that Conte and the County made regarding the totality of the circumstances weighing against a finding of good faith.

If the Court is inclined to grant the Petition, Ford argues that the Court should impose the following conditions: 1) nothing is to be construed as prohibiting any claim for the failure to preserve or spoilation of evidence; 2) nothing hinders or bars Ford's right to offset; 3) nothing hinders or prejudices the parties' right to conduct discovery relating to the Texas actions; 4) the Texas' parties, releasors, and releasees must

still cooperate in discovery and in any stipulation, agreement, or order in any litigation relating to the accident; 5) Ford may still introduce evidence regarding causation, fault, or responsibility of the parties to the settlements; and 6) Ford may seek to have the parties to the settlement listed on the special verdict form.

In its reply, the Estate argues that, under Texas case law, the standard exclusions in auto insurance policies prohibiting family members from recovering benefits if accidentally injured by another family member are invalid up to $20,000 per person/$40,000 per accident for bodily injury.  The Durham family had two policies and therefore Jessica and Marisa were each entitled to $20,000 from each of the two policies.  The Estate also argues that Ford does not need discovery on the Estate's financial matters because Texas is a community property state under which one's home is exempt from creditors. Everything Mark Durham owned at the time of his death already passed to his spouse and heirs.

The Estate also argues that the non-settling defendants cannot get credit for Mark Durham's percentage of negligence because that system of liability was repealed when Haw. Rev. Stat. § 663-15.5 was enacted.  The legislative intent behind § 663-15.5 reveals a greater interest in encouraging settlement than in apportioning liability in an equitable manner.

10

The Estate argues that this district court does have jurisdiction to consider whether the settlements were in good faith because all parties are before the district court and the courts in this state are more familiar with § 663-15.5 than the Texas courts are.

Finally, the Estate argues that the settlements were not collusive.  They were for all of the available automobile insurance policy proceeds and they were overseen by guardians ad litem to protect the minors' interests.  The Texas court found the settlements to be fair and reasonable.  The Estate argues that the non-settling parties have the burden to prove collusion and they cannot do so with speculation or conjecture, which is all the defendants here have presented.  There is no evidence that the settlements were aimed at injuring the non-settling tortfeasors.  The Estate argues that whether a settlement is in good faith is not measured by whether it approximates the settling defendant's liability.

In its supplemental memorandum, the Estate argues that Jessica's and Marisa's "friendly suits" in Texas were mandatory under Texas state law.  Friendly suits are not actually lawsuits; they are merely procedural vehicles to obtain court approval of settlements involving minors.  The Estate contends that it could not have filed Jessica's and Marisa's claims against the Estate in Hawaii because only a Texas court could ultimately approve the

settlements between them.

In its supplemental memorandum, the County argues that Plaintiffs made a tactical decision to file Jessica's and Marisa's claims in Texas while filing the remainder of the claims in Hawaii.  Further, the terms of Jessica's and Marisa's settlements provide that Texas law applies.  Plaintiffs did not demonstrate that Texas law precluded them from including Jessica's and Marisa's claims against the Estate in the instant action.  Even assuming that a Texas court had to ultimately approve any settlement of Jessica's and Marisa's claims, there is no reason why Plaintiffs could not have brought those claims in Hawaii and then sought approval of the settlements from the Texas courts.

In its supplemental memorandum, Ford emphasizes that the "friendly lawsuit" process in Texas is not the same as the good faith settlement process in Hawaii.  Ford notes that the record does not show what evidence the Texas court considered in approving Jessica's and Marisa's settlements with the Estate.[5]

In its supplemental memorandum, Maui Windsurfing first argues that, even if the Petition is granted, it would not extinguish the defendants' counterclaims against the Estate for

---

[5] Ford also complains that the Estate has failed to timely respond to Ford's written discovery requests.  This Court will not address the discovery dispute as it is not relevant to the issues before the Court in the instant Petition.

12

contribution as to Sheri Durham's individual claims because she was not individually part of the Texas actions. Maui Windsurfing also argues that, because Haw. Rev. Stat. § 663-15.5 was based on the California good faith settlement statute, California case law is instructive. Maui Windsurfing states that California courts focus on whether the settlement is reasonable in light of the settling defendant's share of liability. Further, Hawaii courts also consider the settling tortfeasor's relative degree of fault and the amount of consideration paid. There is no indication that the Texas court considered the Estate's share of liability, particularly because not all of the alleged joint tortfeasors were parties to the Texas actions. In addition, if the Texas "friendly suits" were procedural means for Jessica and Marisa to recover insurance benefits, § 663-15.5 would not apply because insurers are neither joint tortfeasors nor co-obligors. Maui Windsurfing also emphasizes that, if the Petition is denied, it would not invalidate Jessica's and Marisa's settlements. Finally, Maui Windsurfing notes that Plaintiffs have filed another Texas action to have the portion of Jessica's settlement relating to Maui Windsurfing set aside. If this happens, any order granting the Petition must be set aside and Plaintiffs would have to file a new petition for determination of good faith settlement based on the revised settlement.

## **DISCUSSION**

Under Hawaii law, a good faith release of a joint tortfeasor or co-obligor does not release the other joint tortfeasors or co-obligors, unless the agreement so provides, but the release reduces their liability.  It also discharges the party released from liability for contribution to another party, unless they have a written agreement apportioning liability.  See Haw. Rev. Stat. § 663-15.5(a).  In considering a petition for determination of good faith settlement, a court may consider affidavits and declarations submitted with the petition and the objection, or the court may receive evidence at a hearing.  See id. § 663-15.5(c).

> A determination by the court that a settlement was made in good faith shall:
> (1) Bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor, except those based on a written indemnity agreement; and
> (2) Result in a dismissal of all cross-claims filed against the settling joint tortfeasor or co-obligor, except those based on a written indemnity agreement.

Id. § 663-15.5(d).

In Troyer v. Adams, the Hawaii Supreme Court adopted a "totality of the circumstances" approach for the § 663-15.5 analysis of whether a settlement was made in good faith.  See 102 Haw. 399, 425, 77 P.3d 83, 109 (2003).  The supreme court noted that the statute's legislative intent focused more on "encouraging settlements than ensuring the equitable

14

apportionment of liability." See id. at 426, 77 P.3d at 110.

The court therefore rejected California's process of conducting

"mini-trials" to determine the parties' probable liability before

approving a settlement.  See id. at 426-27, 77 P.3d at 110-11.

The supreme court stated

> the trial court may consider the following factors
> to the extent that they are known at the time of
> settlement: (1) the type of case and difficulty of
> proof at trial, e.g., rear-end motor vehicle
> collision, medical malpractice, product liability,
> etc.; (2) the realistic approximation of total
> damages that the plaintiff seeks; (3) the strength
> of the plaintiff's claim and the realistic
> likelihood of his or her success at trial; (4) the
> predicted expense of litigation; (5) the relative
> degree of fault of the settling tortfeasors; (6)
> the amount of consideration paid to settle the
> claims; (7) the insurance policy limits and
> solvency of the joint tortfeasors; (8) the
> relationship among the parties and whether it is
> conducive to collusion or wrongful conduct; and
> (9) any other evidence that the settlement is
> aimed at injuring the interests of a non-settling
> tortfeasor or motivated by other wrongful purpose.

Id. at 427, 77 P.3d at 111.  These factors are not exhaustive;

the court may consider any other relevant factor.  See id.

## A.    Applicability of § 663-15.5

The defendants argue that § 663-15.5 does not apply to

the settlements that Jessica and Marisa entered into in the Texas

actions.  Maui Windsurfing argues that §663-15.5 does not apply

because Plaintiffs have characterized the Texas actions as

procedural matters to obtain insurance proceeds and insurers are

neither joint tortfeasors nor co-obligors.  Both the Estate and

Nationwide Mutual Insurance Company ("Nationwide") were the releasees under Marisa's settlement agreement, but the Estate was the only named defendant in her Texas action.  [Exh. A to Petition, Settlement Agreement and Release in <u>Sheri Durham, as Next Friend to Marisa Durham, a minor v. Estate of Mark Durham</u> ("Marisa's Settlement Agreement").]  Jas Braich, Esq., signed Marisa's Settlement Agreement as counsel for the Estate and for Nationwide, which was the underwriter for two of the Durham's insurance policies.  [<u>Id.</u> at 1, 10.]  Similarly, the Estate, Nationwide, Maui Windsurfing, and Zurich Insurance Company ("Zurich") were the releasees under Jessica's settlement agreement, and the Estate and Maui Windsurfing were the only named defendants in her Texas action.  [Exh. F to Petition, Settlement Agreement and Release in <u>Sheri Durham, as Next Friend to Jessica Durham, a minor v. Estate of Mark Durham</u> ("Jessica's Settlement Agreement").]  Zurich was the underwriter for Maui Windsurfing's insurance policy proving coverage for any liability for the collision.  [<u>Id.</u> at 2.]  Thus, although the insurance companies may have funded Jessica's and Marisa's settlements, the payments were made pursuant to insurance policies that Mark Durham owned or was otherwise insured under.  The settlements released the Estate, which is an alleged joint tortfeasor in the instant case.

The defendants also argue that § 663-15.5 does not

apply to Jessica's and Marisa's settlements because they occurred in actions filed outside of Hawaii and without the participation of, or even notice to, the other alleged joint tortfeasors. There is nothing in § 663-15.5 that limits its applicability to settlements reached in Hawaii or to settlements reached in connection with lawsuits filed in Hawaii.  Further, while it is often the case that parties to an action filed in Hawaii participate in settlement negotiations in which only some of the defendants settle, nothing in § 663-15.5 requires the participation of the other alleged joint tortfeasors in the settlement process.  The fact that the other alleged joint tortfeasors were not aware of settlement negotiations between the Estate and Jessica and Marisa does not automatically render § 663-15.5 inapplicable.  The Court, however, notes that the fact that the majority of the defendants did not have knowledge of the Texas actions is relevant to the analysis of the <u>Troyer</u> factors in this case.

This Court therefore FINDS that the Estate may petition for a determination of good faith settlement pursuant to Haw. Rev. Stat. § 663-15.5 regarding its settlements with Jessica and Marisa in the Texas actions.

**B.   <u>Troyer Analysis</u>**

In light of the procedural posture of this case, this Court is unable to determine that the settlements were made in

good faith under the totality of the circumstances.  The Texas court found that the Estate's liability "is uncertain, indefinite and incapable of being satisfactorily established" and the nature of Marisa's injuries and damages "is uncertain, indefinite and incapable of being satisfactorily established".  [Exh. B to Petition, Agreed Final Judgment in <u>Sheri Durham, as Next Friend to Marisa Durham, a minor v. Estate of Mark Durham</u> at 3.]  The Texas court further found that Marisa's Settlement Agreement was "reasonable, fair, and in the best interest of" 1) Sheri Durham, as next friend to Marisa Durham, 2) Marisa Durham, 3) the Estate, and 4) Nationwide.  [<u>Id.</u> at 3-4.]  The Texas court made the same findings with regard to Jessica's Settlement Agreement.  [Exh. D to Petition Agreed Final Judgment in <u>Sheri Durham, as Next Friend to Jessica Durham, a minor v. Estate of Mark Durham</u> at 3-4.]  The record, however, contains no evidence of what the Texas court considered in making these findings.  This Court therefore will not consider the Texas court's findings in analyzing the <u>Troyer</u> factors.

In light of the fact that the instant case is in its relatively early stages and this Court has not conducted any settlement conferences in this case, this Court cannot make a realistic approximation of the damages Plaintiffs seek and this Court cannot evaluate either the strength of Plaintiffs' claims or the Estate's relative degree of fault.  This Court can only

state that the Estate's liability will be a hotly contested issue in this case.  The amount of consideration paid on behalf of the Estate is known, but the Court cannot compare it with the Plaintiffs' total damages sought.  Based on the information available to this Court, however, it is likely only a small portion of Plaintiffs' alleged damages.  Thus, the second, third, and fifth factors weigh against a finding of good faith settlement and the sixth factor is, at best, neutral.

Jessica's and Marisa's settlements were for the maximum amounts available under the applicable automobile insurance policies.  While that would ordinarily weigh in favor of a finding of good faith settlement, this Court does not know what other assets may have been in the Estate and whether Jessica and Marisa could have recovered more from the Estate, even if it was at their mother's expense.  This Court therefore finds that the seventh factor is also neutral.

The Court finds that the circumstances of the Texas cases and the settlements reached therein were conducive to collusion and injury to the interests of the non-settling tortfeasors.  Sheri Durham prosecuted the Texas cases on behalf of her daughters against her husband's estate, even though Jessica's and Marisa's recovery from the Estate could have decreased her share in the Estate.  The Court emphasizes that it is not making a finding that there was collusion, and the Court

acknowledges that Jessica and Marisa each had an independent guardian ad litem in their Texas actions who apparently approved the settlements.  The Court merely finds that the circumstances were conducive to collusion.  Further, the fact that none of the defendants in this action, with the exception of Maui Windsurfing, had notice of the Texas actions suggests a possible intent to injure the non-settling tortfeasors.[6]  This Court therefore finds that the eighth and ninth factors weigh against a finding of good faith settlement.

The only <u>Troyer</u> factors that weigh in favor of a finding of good faith settlement are the first and the third. This is a complex case involving numerous parties and different theories of liability.  Proof at trial will likely be difficult and the entire litigation process will undoubtedly be very expensive for all parties.  These factors provide incentive for early settlement.  Although the <u>Troyer</u> factors are not exhaustive, this Court has not identified any other relevant considerations in this case.

Having weighed all of the relevant factors, this Court cannot find that the settlements in the Texas actions were made in good faith under the totality of the circumstances.  The Court

---

[6] Even if this Court accepts Plaintiffs' position that they were required to file Jessica's and Marisa's claims against the Estate in Texas, Plaintiffs could have notified the defendants in the instant case of the Texas actions.

notes that, if the district judge adopts this Court's findings and recommendation, it would not invalidate the settlements reached in the Texas actions.  It would only mean that the Texas settlements would not have a preclusive effect in the instant case.

**CONCLUSION**

On the basis of the foregoing, this Court HEREBY FINDS AND RECOMMENDS that the Estate of Mark Durham's Petition for Finding of Good Faith Settlements, filed on March 11, 2009, be DENIED.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, May 29, 2009.



   /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**SHERI GAIL DURHAM, ET AL. V. COUNTY OF MAUI, ET AL.; CIVIL NO. 08-00342 JMS-LEK; FINDINGS AND RECOMMENDATION TO DENY THE ESTATE OF MARK ALLEN DURHAM'S PETITION FOR FINDING OF GOOD FAITH SETTLEMENTS**