```
                 IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF HAWAII

SHERI GAIL DURHAM,                )    CV NO 08-00342 JMS-LEK
INDIVIDUALLY AND AS NEXT          )
FRIEND OF JESSICA HALEY           )
DURHAM AND MARISA UMA LAMA        )
DURHAM, BOTH MINORS, AND AS       )
ADMINISTRATOR OF THE ESTATE       )
OF MARK ALLEN DURHAM,             )
DECEASED,                         )
                                  )
          Plaintiff,              )
                                  )
     vs.                          )
                                  )
COUNTY OF MAUI, ET AL.,           )
                                  )
          Defendants.             )
_____   )
```

**FINDINGS AND RECOMMENDATION TO GRANT PATTY CONTE'S
<u>MOTION FOR APPROVAL OF GOOD FAITH SETTLEMENT</u>**

Before the Court is Defendant Patty Conte's ("Conte") Motion for Approval of Good Faith Settlement ("Motion"), filed on September 10, 2009.  Plaintiffs Sheri Gail Durham, individually and as next friend of Marisa Uma Lama Durham, minor, and Denise Ann Jenkins, as the Administrator of the Estate of Jessica Haley Durham, deceased minor, and as the Administrator of the Estate of Mark Allen Durham, deceased (collectively "Plaintiffs"), filed their joinder on October 1, 2009.  Defendant County of Maui ("the County") filed its memorandum in opposition, and Defendant Kapiolani Medical Center for Women & Children and Hawaii Pacific Health (collectively "KMCWC") filed a joinder in the County's memorandum in opposition, on October 9, 2009.

Defendant Ford Motor Company ("Ford") filed its Statement regarding the Motion also on October 9, 2009.  Defendants Maui Windsurfing Vans, Inc. ("Maui Windsurfing") and Byron H. Izuka and Byron H. Izuka, M.D., L.L.C. ("Izuka") filed their joinders in the County's memorandum in opposition on October 13 and 14, 2009, respectively.  The County filed its joinder in Ford's Statement on October 14, 2009, and Conte filed her reply on October 16, 2009.

This matter came on for hearing on October 29, 2009. The following counsel appeared at the hearing: Sarah M. Love, Esq. and Amanda Weston, Esq. on behalf of Plaintiffs; Moana Lutey, Esq., by telephone, and John-Anderson Meyer, Esq., on behalf of the County; Marilyn Naitoh, Esq., on behalf of Conte; Lois Yamaguchi, Esq., on behalf of Ford; Ann Aratani, Esq., on behalf of Maui Windsurfing; Christian Adams, Esq., on behalf of Defendant Izuka; and Edquon Lee, Esq., on behalf of KMCWC.

After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, this Court HEREBY FINDS AND RECOMMENDS that Conte's Motion be GRANTED for the reasons set forth below.

## BACKGROUND

The facts of this case have been set forth in this Court's previous orders and it does not repeat the same here

2

except as may be relevant to this Motion.

On July 26, 2006, Mark Durham was driving a 2004 Ford Focus station wagon ("the Vehicle") in Maui, Hawaii. Mark Durham rented the Vehicle from Defendant Maui Windsurfing. As he drove through the intersection of Pulehu Road and Hansen Road, the Vehicle collided with a Hyundai Santa Fe sport utility vehicle driven by Defendant Patty Conte. Mark Durham's daughters, Jessica and Marisa Durham, were passengers in the Vehicle. [First Amended Complaint ¶ 14.] Mark Durham suffered fatal injuries in the collision. Jessica and Marisa suffered non-fatal injuries and witnessed the injuries and suffering that their father experienced.[1] Sheri Durham was called to the scene of the accident and she witnessed the injuries and suffering of her husband and daughters. [Id. ¶¶ 16-19.]

Jessica's injuries included a femur fracture and she was transferred to Kapiolani Hospital. Jessica was treated by Defendant Izuka, a specialist in various orthopedic injuries. Defendant Izuka diagnosed Jessica and performed surgery on her. Pursuant to Defendant Izuka's orders, Jessica also underwent physical therapy at Kapiolani Hospital. After her physical therapist noticed a problem, Jessica under went x-rays, which showed that the metal plate Defendant Izuka installed was bent and the femur fracture was displaced. When she returned to

---

[1] Jessica passed away during the pendency of this action.

Dallas, Texas, Jessica underwent another corrective surgery. However, she still had a non-union of her left femur and limited to no use of her left leg. She underwent numerous surgeries, including a mid-thigh amputation of her left leg. [Id. ¶¶ 20, 23-30.]

The First Amended Complaint alleges the following claims:

- Count I: municipal liability - Defendant County of Maui ("the County") was negligent. The subject intersection is inherently dangerous and poorly designed and/or maintained. The County allegedly failed to respond appropriately to the high volume of collisions at the subject intersection prior to the Durhams' accident. [Id. at ¶¶ 33-38.]
- Count II: negligence - Conte was negligent in her operation of her vehicle. [Id. at ¶ 39-41.]
- Count III: negligence and strict liability - Defendant Ford Motor Company ("Ford") designed, manufactured, assembled, marketed, or otherwise placed the Vehicle in the stream of commerce. The Vehicle and its occupant restraint system were dangerously defective in various respects and did not comply with mandatory safety standards. Ford knew of the defects and did not respond reasonably. [Id. at ¶¶ 42-51.]
- Count IV: negligence and strict liability - Maui Windsurfing knew or should have known that the Vehicle's model and occupant restraint system were defective and unreasonably dangerous and it breached its duty of care by failing to adequately deal with the issue. [Id. at ¶¶ 52-61.]
- Count V: survival and wrongful death claim against Ford, Maui Windsurfing, Conte, and the County. [Id. at ¶¶ 62-64.]
- Count VI: gross negligence against Ford. [Id. at ¶¶ 65-68.]
- Count VII: negligence and gross negligence - Defendant Izuka was negligent in his care of Jessica and his negligence rose to the level of gross negligence. [Id. at ¶¶ 69-77.]
- Count VIII: negligence and gross negligence - Kapiolani and Defendant Hawaii Pacific Health ("HPH"), which controls Kapiolani, are responsible for Defendant Izuka's negligent acts under a theory of *respondeat superior* and they were negligent in their own regard. [Id. at ¶¶ 78-84.]

There have been various cross-claims and counterclaims alleged in

this action.  Conte, Ford, the County, KMCWC, and Maui Windsurfing have all filed counterclaims against the Estate.

In the instant Motion, Conte states that at the time of the subject accident, she was insured under an automobile liability policy issued by the Government Employees Insurance Company ("GEICO Policy").  The GEICO Policy provided bodily injury liability limits of $20,000 each person, and $40,000 each accident.  Conte also states that she has reached a settlement with Plaintiffs concerning their claims against her.  [Motion, Exh. A (Joint Tortfeasor Release and Indemnity Agreement).][2] Conte therefore seeks a determination of good faith settlement pursuant to Haw. Rev. Stat. § 663-15.5.

Plaintiffs claims were settled for $40,000.00, representing the maximum policy limit available to Conte under the GEICO Policy.[3]  Conte asserts that based on the totality of the circumstances in this case, a determination of good faith settlement pursuant to Haw. Rev. Stat. § 663-15.5(a) is warranted.  First, there was no collusion on the part of the Plaintiffs and Conte aimed at injuring the interests of the non-settling parties.  Second, liability and damages are disputed by

---

[2] The Joint Tortfeasor Agreement indicates Plaintiffs as the releasors and Conte and GEICO as the releasees.  [Motion, Exh. A.]

[3] The settlement is allocated $20,000 to Sheri Durham, in her individual capacity, and $20,000 to Sheri Durham, as Next Friend of Marisa.  [Id.]

Conte.  Third, Plaintiffs have alleged significant injuries in this case and claim an undisclosed amount of special and general damages.  Despite the undisclosed claim for damages, GEICO has offered the bodily injury liability limits under the policy.  Fourth, if a settlement had not been reached, Conte would have incurred substantial additional attorneys' fees, expert witness fees and other costs and expenses related to preparing fro a trial in this matter.  In addition, Conte notes that she does not have substantial personal assets nor other liability insurance policy to pay for any adverse judgment against her.

   In its memorandum in opposition to the Motion, the County first states that it is difficult to determine whether this statement should be considered a good faith settlement under Hawaii Revised Statutes § 663-15.5.  Based on the factors set forth under <u>Troyer</u>, the totality of the circumstances weigh against approving the settlement.   Next, the County asserts that there is insufficient evidence regarding Conte's assets and other insurance.  The County notes that the sole information regarding that is the declaration of Conte's counsel (Marilyn Naitoh, Esq.) and the Tort Release and Indemnity Agreement.  However, the declaration provides no indication of Conte's assets.  The County also notes that this Court has recently denied a petition for good faith settlement by the Estate in this case indicating that the case was in its relatively early stages and that the second

(realistic approximation of damages), third (strength of plaintiff's claims), and fifth (relative degree of fault of the settling tortfeasors) Troyer factors weighed against a finding of good faith settlement.  The County argues that the circumstances of that prior petition are similar to the instant Motion and that it should be denied.

In its Statement regarding the Motion, Ford states that it has no objection to the Motion provided that Court should impose the following conditions: 1) nothing hinders or bars Ford's right to offset; 2) nothing hinders or prejudices Ford's right to conduct discovery of any of the parties, releasees, releasors, or their respective insurance companies; 3) the parties, releasors, and releasees must still cooperate in discovery process and trial in this matter; 4) Ford may still introduce evidence regarding causation, fault, or responsibility of the parties to the settlements; and 5) Ford may seek to have the parties to the settlement listed on the special verdict form.

In her reply, Conte reiterates that the Motion should be granted because the settlement between her and Plaintiffs was given and made in good faith.  Conte notes that the burden of proving a lack of goof faith is on the non-settling joint tortfeasor.  Conte asserts that the County does not come forward with any evidence, or even argues, that there was collusion, fraud, dishonesty, or other tortious conduct between her and

Plaintiffs with respect to this settlement.  The County's main complaint is the possibility that Conte may have significant undisclosed wealth.  Conte disputes that complaint and first points to her Initial Disclosures filed October 29, 2009, that indicate that at the time of the accident she had an automobile insurance policy with limits of $20,000.  Moreover, her declaration, attached to the reply, confirms that Conte has minimal assets, ongoing expenses, and that the bulk of her wage earnings go toward her home mortgage, car loan and credit card debt.

In addition, Conte disagrees that the second, third and fifth factors weigh against a good faith finding.  Conte notes that this is not a case where liability was admitted and damages undisputed but instead a case where Conte has denied all along that she was liable for the accident.  Moreover, there is evidence that Conte had the right of way at the intersection where the accident occurred and that Mark Durham may have been under the influence of marijuana at the time.  That evidence indicates that the third and fifth Troyer factors weigh in favor of approving the Motion.  Given the foregoing, Conte argues that the second factor similarly favors an approval of the Motion.

Finally, Conte states that she takes no position as to Ford's Statement other than to request that to the extent the Court is inclined to consider any of Ford's conditions to the

good faith determination, that those conditions not act to delay the settlement. Conte also requests that to the extent Conte should remain on the special verdict form, the Court's order regarding this Motion should also reflect that no judgment may be entered against her with respect to t he special verdict form.

## DISCUSSION

Under Hawaii law, a party must petition the court for a hearing on the issue of whether a settlement was made in good faith and must serve notice to all known joint tortfeasors or co-obligors. See Haw. Rev. Stat. § 663-15.5(b). "The petition shall indicate the settling parties and, except for a settlement that includes a confidentiality agreement regarding the case or the terms of the settlement, the basis, terms, and settlement amount." Id. Any non-settling party may file an objection and such party bears the burden of proving a lack of good faith. See id.

In Troyer v. Adams, the Hawaii Supreme Court adopted a "totality of the circumstances" approach for the section 663-15.5 analysis of whether a settlement was made in good faith. See 102 Hawai'I 399, 425, 77 P.3d 83, 109 (2003). The court noted that the statute's legislative intent focused more on "encouraging settlements than ensuring the equitable apportionment of liability." See id. at 426, 77 P.3d at 110. The court therefore rejected California's process of conducting "mini-trials" to

9

determine the parties' probable liability before approving a settlement.  See id. at 426-27, 77 P.3d at 110-11.  The supreme court stated,

> the trial court may consider the following factors to the extent that they are known at the time of settlement: (1) the type of case and difficulty of proof at trial, e.g., rear-end motor vehicle collision, medical malpractice, product liability, etc.; (2) the realistic approximation of total damages that the plaintiff seeks; (3) the strength of the plaintiff's claim and the realistic likelihood of his or her success at trial; (4) the predicted expense of litigation; (5) the relative degree of fault of the settling tortfeasors; (6) the amount of consideration paid to settle the claims; (7) the insurance policy limits and solvency of the joint tortfeasors; (8) the relationship among the parties and whether it is conducive to collusion or wrongful conduct; and (9) any other evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasor or motivated by other wrongful purpose.

Id. at 427, 77 P.3d at 111.  These factors are not exhaustive; the court may consider any other relevant factor.  See id.

The County primarily rests its opposition to the Motion on this Court's language in a previous order denying the Estate of Mark Durham's Petition for Finding of Good Faith Settlements.  [Mem. in Opp. at 3-4.].  In particular, the County relies on this Court's finding, at the time, that the second, third and fifth factors in Troyer weighed in favor of denying the Estate's Petition because the instant case was still in its "relatively early stages."  The County also contends that the seventh factor weighs in favor of denial on the basis that Conte has failed to

submit anything that would demonstrate her personal solvency.

The Court is not persuaded by the County's arguments and finds that Conte and Plaintiffs entered into the settlement in good faith. The Court notes that since its previous order, the instant case has advanced considerably. For example, based on the motions and other matters this Court has handled in the instant action, it appears that a fair amount of discovery has been conducted and Plaintiffs have even submitted their expert reports to Defendants. This Court is well familiar with the factual and legal issues surrounding this case and finds that the second, third and fifth <u>Troyer</u> factors weigh in favor of a finding of a good faith settlement as between Conte and Plaintiffs. In addition, based on Conte's declaration submitted with her reply, the Court also finds that the seventh factor weighs in favor of such a finding as well.

Therefore, after considering the factors set forth in <u>Troyer</u>, the totality of circumstances, and after reviewing the essential terms of the settlement, the Court finds that the settlement was reached in good faith for the purposes of Hawaii Revised Statutes section 663-15.5.

## **CONCLUSION**

On the basis of the foregoing, the Court FINDS AND RECOMMENDS that the district court grant Defendant Patty Conte's Motion for Approval of Good Faith Settlement, filed September 10,

2009.

       IT IS SO ORDERED.

       DATED AT HONOLULU, HAWAII, November 17, 2009.



       /S/ Leslie E. Kobayashi
       Leslie E. Kobayashi
       United States Magistrate Judge


**SHERI GAIL DURHAM, ETC., ET AL. V. COUNTY OF MAUI, ET AL; CIVIL NO 08-00342 JMS-LEK; FINDINGS AND RECOMMENDATION TO GRANT PATTY CONTE'S MOTION FOR APPROVAL OF GOOD FAITH SETTLEMENT**