IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHERI GAIL DURHAM, Individually and as next of Friend of MARISA UMA LAMA DURHAM, MINOR ET AL., | CIV. NO. 08-00342 JMS/LEK |
| Plaintiffs, | ORDER (1) DENYING DEFENDANT MAUI WINDSURFING VANS, INC.'S MOTION FOR SUMMARY JUDGMENT AS TO COUNTS IV AND IX OF PLAINTIFFS' SECOND AMENDED COMPLAINT, AND FOR SUMMARY JUDGMENT ON ITS COUNTER CLAIM AGAINST PLAINTIFFS (DOC NO. 515); AND (2) DENYING DEFENDANT MAUI WINDSURFING VANS, INC.'S MOTION FOR SUMMARY JUDGMENT AS TO ITS CROSS-CLAIM AGAINST FORD MOTOR COMPANY (DOC NO. 525) |
| vs. | |
| COUNTY OF MAUI, ET AL. | |
| Defendants. | |

**ORDER (1) DENYING DEFENDANT MAUI WINDSURFING VANS, INC.'S MOTION FOR SUMMARY JUDGMENT AS TO COUNTS IV AND IX OF PLAINTIFFS' SECOND AMENDED COMPLAINT, AND FOR SUMMARY JUDGMENT ON ITS COUNTER CLAIM AGAINST PLAINTIFFS (DOC NO. 515); AND (2) DENYING DEFENDANT MAUI WINDSURFING VANS, INC.'S MOTION FOR SUMMARY JUDGMENT AS TO ITS CROSS-CLAIM AGAINST FORD MOTOR COMPANY (DOC NO. 525)**

## I.  INTRODUCTION

This action arises from a July 26, 2006 two-car accident between a

2004 Ford Focus station wagon (the "subject vehicle") driven by Mark Durham

and rented from Maui Windsurfing Vans, Inc. ("Maui Windsurfing"), and a 2003

Hyundai Santa Fe Sport Utility Vehicle ("SUV") driven by Patty Conte.  Mark Durham passed away as a result of his injuries in the accident.  His daughters, Jessica and Marisa, both passengers in the subject vehicle, also sustained injuries and Jessica passed away over two years later.

As a result of this accident, Plaintiffs Sheri Gail Durham ("Sheri Durham"), individually and as next friend of Marisa Uma Lama Durham, and Denise Ann Jenkins ("Jenkins"), as the Administrator of the Estates of Mark Durham and Jessica Durham, (collectively "Plaintiffs"), allege that the subject vehicle was defective because it lacked side airbags and its side structure and seat belts in concert with the seats did not reasonably minimize head and chest injuries in side impact collisions involving sport utility vehicles ("SUVs").  Plaintiffs therefore allege claims against various defendants, including claims against Maui Windsurfing for negligence, strict liability, survival, and wrongful death (Counts IV and IX of the Second Amended Complaint ("SAC")).  Maui Windsurfing has asserted a Counterclaim against Plaintiffs seeking contribution, and a Cross-Claim against Ford Motor Company ("Ford") for contribution and indemnity should Maui Windsurfing be found liable to Plaintiffs.

Currently before the court are Maui Windsurfing's Motions for Summary Judgment on (1) Counts IV and IX of the SAC and Maui Windsurfing's

Counterclaim against Plaintiffs (Doc. No. 515), and (2) Maui Windsurfing's Cross-

Claim against Ford (Doc. No. 525).  Based on the following, the court finds that

genuine issues of material fact exist for each of these claims and DENIES Maui

Windsurfing's Motions for Summary Judgment.

## II.  BACKGROUND

### A.   Factual Background

#### 1.   The Parties' Claims Arising from the Accident

This action arises from a July 26, 2006 two-car accident at the

intersection of Pulehu Road and Hansen Road in the County of Maui.  Mark

Durham was driving the subject vehicle on Pulehu Road with his two minor

daughters Jessica and Marisa.  Based on the police investigation, it appears that

Mark Durham failed to heed a stop sign at the intersection with Hansen Road,

resulting in the SUV driven by Patty Conte on Hansen Road hitting the subject

vehicle on its left side.  *See* Pls.' Ex. 1.  Mark Durham passed away as a result of

his injuries in the accident.  Jessica and Marisa also sustained injuries, and Jessica

passed away over two years later.

The Durhams had rented the subject vehicle from Maui Windsurfing

and Plaintiffs have subsequently alleged claims against Maui Windsurfing for

negligence and strict liability, and derivative claims for wrongful death and

survivorship.  Specifically, Plaintiffs allege that the subject vehicle and its

occupant restraint system were defectively designed, marketed, manufactured, and

distributed because:

> A.   the side structure does not reasonably minimize head, chest and leg injuries to the occupants in side impact collisions involving an SUV;
> B.   the vehicle is not equipped with a side air bag system to reasonably minimize head, chest and leg injuries to the occupants in side impact collisions involving an SUV;
> C.   the seat belts in concert with the seats fail to reasonably minimize head and chest injuries to the occupants in side impact collisions involving an SUV; and
> D.   Maui Windsurfing failed to adequately warn or instruct its consumers about the hazards associated with the model vehicle.

SAC ¶ 63.

The SAC further alleges that Maui Windsurfing had a duty to exercise

ordinary care in leasing the subject vehicle and occupant restraint system to ensure

that they were not defective and unreasonably dangerous for their foreseeable use

and that Maui Windsurfing breached this duty by:

> A.   failing to adequately monitor the performance of prior model vehicles in the field to ensure that the vehicle model and its occupant restraint system were safely designed;
> B.   designing or distributing the model vehicle and occupant restraint system to design standards and performance objectives that were intended to meet

> minimum and inadequate government regulations, instead of safely designing the model vehicle and occupant restraint system to meet the known and foreseeable risks associated with side impacts from SUV's;
>
> C.    failing to adequately test the model vehicle and occupant restraint system to ensure that they would be reasonably safe for side impacts from SUV's;
>
> D.    failing to require side air bags as a mandatory safety feature, as compared to an option; and
>
> E.    failing to recall, retrofit, or issue a post-sale warning after Maui Windsurfing knew, or should have known, that the model vehicle and occupant restraint system were defective and unreasonably dangerous.

*Id.* ¶¶ 67, 69.

Maui Windsurfing has counterclaimed against Jenkins and Sheri Durham, alleging that Jenkins, as Administrator of the Estate of Mark Durham, is liable for all of Plaintiffs' injuries and/or damages due to Mark Durham's negligence, and that Plaintiffs are liable for all their injuries and/or damages pursuant to the Rental Contract that the Durhams signed with Maui Windsurfing. Maui Windsurfing Counterclaim ¶¶ 5-6. Maui Windsurfing also asserts a Cross-Claim against Ford, alleging that if Maui Windsurfing is held liable to Plaintiffs, then Ford is liable to Maui Windsurfing for strict products liability, product design, negligence, breach of duty, or other wrongful acts and/or omissions. Maui Windsurfing Cross-Claim ¶¶ 10-14.

5

**2.      *Facts Relevant to the Court's Determination of Maui Windsurfing's Motions for Summary Judgment***

Maui Windsurfing purchased the Ford Focus new from Valley Island Motors on March 15, 2005.  Maui Windsurfing Concise Statement of Facts ("MWCSF") ¶¶ 6-7.  Up until the Durhams rented the Ford Focus in July 2006, Maui Windsurfing serviced the subject vehicle periodically, and its servicing is not in dispute in this action.  *See* MWCSF ¶¶ 14-20 (cataloguing the maintenance of the subject vehicle); Maui Windsurfing Ex. E at 1-4 (indicating tune-ups and oil changes).  Rather, at issue is whether the subject vehicle was defectively designed, what steps, if any, Maui Windsurfing should have taken to protect its renters, and whether the Durhams waived their rights to bring claims against Maui Windsurfing by signing the Rental Contract.

**a.      *Maui Windsurfing's actions and the subject vehicle***

Plaintiffs have presented the expert report of Stephen Syson ("Syson Report"), which opines that: (1) the 2004 Ford Focus is not as resistant to side impact collisions as other passenger cars, including other Ford automobiles, Syson Decl. Ex. A at 9 ¶ XI(A); (2) the side structure of the subject vehicle was too weak to adequately resist the striking Hyundai SUV, *id.* ¶ XI(B); (3) the doors of the subject vehicle failed to properly transmit forces to the sill, because there is not interface to carry loads from the doors into the sill, *id.* ¶ XI(C); (4) Ford failed to

6

use various structural design features that would minimize intrusion velocity in the subject vehicle; *id.* at 13 ¶ XI(N); and (5) the failure to include a reasonable and adequate side structure in the subject vehicle rendered it unsafe, defective, and unreasonably dangerous and was a cause of Plaintiffs' injuries and death.  *Id.* ¶ XI(O).  The Syson Report further opines that Maui Windsurfing, as the lessor of the subject vehicle, "should have investigated and provided the optional side impact airbag system because it was renting the vehicles."  *Id.* at 15 ¶ XII(I).

        In comparison, Maui Windsurfing asserts that it was never provided any written disclosure or notice from Ford (1) of any warning or recall notice concerning the subject vehicle; (2) that the subject vehicle, its side support system and/or occupant restraint system were defectively designed, marketed, manufactured, or distributed; or (3) that Maui Windsurfing should not rent or lease the subject vehicle because its side structure and occupancy restraint system were defective and unreasonably dangerous in side impact collisions involving an SUV. West Decl. ¶¶ 7-9.  Maui Windsurfing further asserts that it did not receive any complaints or reports regarding the safety of or defects in the operation of the Ford Focus prior to the July 26, 2006 accident, and that it performed safely as an ordinary consumer would expect when it was used in its intended or reasonably foreseeable manner.  *Id.* ¶¶ 7, 10.

>    b.    *The Durham's Rental Agreement with Maui Windsurfing*

Prior to the accident, on July 1, 2006, Mark and Sheri Durham entered

into a one-month Rental Contract with Maui Windsurfing for the rental of the

subject vehicle.  The Rental Contract provides, in part:

> 4.  Lessee shall indemnify and hold Lessor harmless from all fines, penalties, forfeitures and disabilities arising from the use of the rented vehicle and imposed by any federal, state, county and Municipal Statute and law or insurance provision.
>
> 5.  Lessee may be fully liable for all collision, fire and theft damages and all other loss, if vehicle is used, operated, or driven in violation of any of the provisions of this agreement, or if lessee uses drives or permits operation of the rented vehicle under the influence of drugs or alcohol or in violation of the criminal or motor vehicle statutes, or is grossly negligent in the use of the vehicle. . . .
>
> 6.  Liability Insurance.  Anyone driving the car as permitted by this agreement will be protected against liability for causing bodily injury or death to others or damaging the property of someone other than the driver and/or renter up to the minimum of financial responsibility limits required by applicable law.  The limit for bodily injury sustained by one person includes any claim for loss of that person's consortium or service. . . .  I understand that unless required by applicable law, you will not provide (a) Coverage for fines, penalties, punitive or exemplary damages (b) Coverage for bodily injury, or death of myself while not a driver, or any member of my family or the driver's family (c) Defense against any claim after applicable limits of coverage that you furnish have been tendered. (d) supplementary no fault, non-compulsory uninsured or under insured motorist coverage, and any other optional or rejectable

8

coverage and you and I reject all such coverage to the
extent permitted by law.

Maui Windsurfing Ex. B. ¶¶ 4-6.

## B.    Procedural History

On July 24, 2008, Plaintiffs filed this action.  The SAC alleges claims
against Maui Windsurfing for negligence and strict liability, and derivative claims
for wrongful death and survivorship (Counts IV and IX of the SAC).[1]  On
December 2, 2009, Maui Windsurfing filed its current Counterclaim against
Plaintiffs and Cross-Claim against Ford.

Also on December 2, 2009, Maui Windsurfing filed its Motions for
Summary Judgment on (1) Counts IV and IX of the SAC and its Counterclaim
against Jenkins and Sheri Durham, and (2) its Cross-Claim against Ford.  On
December 29, 2009, Plaintiffs and Ford filed Oppositions, and on January 5, 2010,
Maui Windsurfing filed its Replies.  A hearing was held on January 19, 2010.

---

[1]  The SAC also alleges claims against Ford for negligence, gross negligence, strict
liability, wrongful death, and survivorship, the County of Maui for road defect and dangerous
conditions at the accident scene, medical malpractice claims against Kapiolani Medical Center
for Women and Children, Hawaii Pacific Health, Dr. Byron H. Izuka, Byron Izuka, M.D., LLC.,
Dr. Shila Patel, Kapiolani Medical Specialists, Dr. James Y. Sim, and James Y. Sim, M.D., LLC
related to the care provided to Jessica.  The SAC further alleges claims against Conte, but she is
no longer a party to this action.

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

## IV. DISCUSSION

### A. Maui Windsurfing's Motion for Summary Judgment Against Plaintiffs

Maui Windsurfing argues that Plaintiffs have failed to establish a genuine issue of material fact in support of their claims and that in any event, the Rental Contract bars Plaintiff's claims. The court addresses each argument in turn.

### 1.   *Negligence and Strict Liability*

An individual injured by a defective product may assert claims of negligence and/or strict liability, and may base those claims on "defective manufacture, defective design, or insufficient warning." *Wagatsuma v. Patch*, 10 Haw. App. 547, 564, 879 P.2d 572, 583 (1994). Such products liability claim "'has three elements: (1) a duty to anticipate and design against reasonably foreseeable hazards; (2) breach of that duty; and (3) injury proximately [i.e., legally] caused by the breach.'" *Tabieros v. Clark Equip. Co.*, 85 Haw. 336, 370, 944 P.2d 1279, 1313 (1997) (quoting *Wagatsuma*, 10 Haw. App. at 564, 879 P.2d at 583).

"In negligence, the plaintiff must show that the defendant breached its duty of care, while in strict liability the plaintiff must show that the product was defective because it was unreasonably dangerous." *Wagatsuma*, 10 Haw. App. at 564, 879 P.2d at 583. Stated differently, "[n]egligence theory concerns itself with determining whether the conduct of the defendant was reasonable in view of the foreseeable risk of injury; strict liability is concerned with whether the product itself was unreasonably dangerous." *Id.* at 564-65, 879 P.2d at 583 (quotations omitted).

12

a.   *Whether a genuine issue of material fact supports Plaintiffs' claims*

Plaintiffs state a negligence claim under both defective design and failure to warn theories, as well as a strict liability claim.

i.   Plaintiffs' negligence claim based on design defect

Plaintiffs allege that Maui Windsurfing breached its duty to exercise ordinary care to ensure that the subject vehicle was not defective and unreasonably dangerous for its foreseeable use by, among other things, failing to require side air bags as a mandatory safety feature.  SAC ¶ 69.

Maui Windsurfing argues that it is entitled to summary judgment on this claim because it properly maintained the subject vehicle and did not have notice of any potential defects.  Doc. No. 515, Maui Windsurfing Mot. 14-15. Although Plaintiffs do not dispute that the subject vehicle was properly maintained, they raise the reasonableness of the inspection Maui Windsurfing performed in selecting the subject vehicle.  Pls.' Opp'n 9-10.

The Restatement (Second) of Torts, § 408, comment a, explains the lessors have a duty to inspect leased goods:

> If the chattel is made by a third person, the lessor is required to exercise reasonable care to inspect it before turning it over to the lessee. . . .  [A] lessor who has purchased a chattel from a maker who has a high reputation for the quality of his product may to a large

13

> extent rely upon the article as being well made, and is
> required to make only such inspections as any purchaser
> from such maker should make before using it.

Applying the Restatement,[2] because Ford has a high reputation for the quality of its vehicles, Maui Windsurfing had a duty to inspect the subject vehicle only to the same extent as any purchaser.

Despite citing to § 408 of the Restatement, Maui Windsurfing has presented *no* evidence regarding its inspection of the subject vehicle. Without such information, the court cannot determine as a matter of law that Maui Windsurfing fulfilled its duty to inspect the subject vehicle and acted reasonably in providing the subject vehicle to the Durhams. On this basis alone, Maui Windsurfing has failed to carry its burden of showing that there is no genuine issue of material facts supporting Plaintiffs' negligence design defect claim.

Further, even if Maui Windsurfing carried its initial burden of establishing a lack of genuine issue of material fact in support of this claim,

---

[2] While Hawaii courts have not specifically adopted this section of the Restatement, because Hawaii courts have relied on and adopted many portions of the Restatement, the court finds that the Hawaii Supreme Court would find § 408 persuasive authority. *See, e.g.*, *Hac v. Univ. of Haw.*, 102 Haw. 92, 106, 73, P.3d 46, 60 (2003) (discussing and adopting Restatement (Second) of Torts' formulation for intentional infliction of emotional distress claim); *Touchette v. Ganal*, 82 Haw. 293, 298-99, 922 P.2d 347, 352-53 (1996) (stating that Hawaii follows § 315 of the Restatement (Second) of Torts regarding special relations tort liability); *Smith v. Cutter Biol., Inc., a Div. of Miles Inc.*, 72 Haw. 416, 430, 823 P.2d 717, 725 (1991) (discussing alternative liability in § 433B of the Restatement (Second) of Torts); *see also Bynum v. Magno*, 106 Haw. 81, 86 n.12, 101 P.3d 1149, 1154 n.12 (2004) ("This court has many times relied on the Restatement (Second) of Torts as persuasive authority.").

Plaintiffs have raised a question of fact regarding Maui Windsurfing's inspection through the Syson Expert Report, which opines that Maui Windsurfing should have investigated and provided vehicles with an optional side impact airbag system. Syson Decl. Ex. A. at 15 ¶ XII(I). Drawing all reasonable inferences in favor of Plaintiffs, Syson's statement suggests that Maui Windsurfing should have investigated and determined that vehicles without side airbags were unsafe, and subsequently provided only those vehicles with side airbags to its customers.

In sum, the court finds that genuine issues of material fact still exist regarding whether Maui Windsurfing was negligent in providing the subject vehicle to the Durhams.

ii.     Plaintiffs' negligence claim based on failure to warn

Plaintiffs assert that Maui Windsurfing breached its duty of care by failing to issue a post-sale warning after it knew or should have known that the subject vehicle and its occupant restraint system were defective and unreasonably dangerous. SAC ¶ 69(E).

Maui Windsurfing argues that it is entitled to summary judgment on this claim because it lacked any notice of any possible product defects. Doc. No. 515, Maui Windsurfing Mot. 17. The issue, however, is not whether Maui Windsurfing had actual notice of the alleged vehicle defects, but whether Maui

15

Windsurfing knew *or had reason to know* that the Ford Focus was dangerous.  *See*

Restatement (Second) of Torts § 388 (stating that a lessor may face liability if it

"knows or has reason to know that the chattel is or is likely to be dangerous for the

use for which it is supplied").[3]

      As discussed above, the Syson Report asserts that Maui Windsurfing,

as the lessor of the vehicle, should have investigated and provided vehicles with an

optional side impact airbag system.  Drawing all reasonable inferences in favor of

Plaintiffs, the Syson Report suggests that Maui Windsurfing should have

investigated and determined that the Ford Focus without side airbags was unsafe,

and to the extent it chose vehicles without side airbags, warned its renters of this

danger.  Accordingly, it is a question of fact whether Maui Windsurfing breached

its duty of care by failing to warn the Durhams about the lack of side airbags.

---

    [3] Relying on *Tabieros v. Clark Equipment Co.*, 85 Haw. 336, 944 P.2d 1279 (1997), Maui Windsurfing suggests that it does not have a duty to warn unless it has actual knowledge of the danger causing damage.  *See* Doc. No. 634, Maui Windsurfing Reply 7 ("Maui Windsurfing did not have a duty to warn because it was not made aware of any known danger of the Ford Focus at any time during its ownership.").  *Tabieros* does not support this proposition.  *Tabieros* provides "[t]he duty to warn exists where a danger concerning the product becomes known to the manufacturer subsequent to the sale and delivery of the product, even though it was not known at the time of the sale."  85 Haw. 355 n.11, 944 P.2d 1298 n.11.  Maui Windsurfing is not a manufacturer, and there is no evidence that Maui Windsurfing learned of any defects after purchasing the Ford Focus.  Rather, the crux of Plaintiff's claim is that Maui Windsurfing should have known of the alleged defects when purchasing the vehicle and therefore should have issued a warning to the Durhams.

iii.    Plaintiffs' strict liability claim

Plaintiffs assert that the subject vehicle and its occupant restraint system were defective and unreasonably dangerous.  SAC ¶ 63.

Maui Windsurfing argues that summary judgment should be granted on this claim because "there is *no evidence* to show that the rented vehicle was in fact defective and dangerous."  Doc. No. 515, Maui Windsurfing Mot. 20.  The court disagrees -- the Syson Report opines, among other things, that the failure to include a reasonable and adequate side structure in the subject vehicle rendered it unsafe, defective, and unreasonably dangerous.  Syson Decl. Ex. A at 13 ¶ XI(O). It is therefore a fact question whether the subject vehicle was unreasonably dangerous.

In opposition, Maui Windsurfing argues that summary judgment should be granted because the subject vehicle was destroyed.  Specifically, Maui Windsurfing argues that because the vehicle was destroyed, the Syson Report is not based on any evidence that shows that the subject vehicle had a design or manufacturing defect.  Doc. No. 634, Maui Windsurfing Reply 11.  Maui Windsurfing further argues that Plaintiffs failed to preserve the subject vehicle and should be sanctioned by the court dismissing this claim.  *Id.* at 11-13.

As to Maui Windsurfing's first argument that the Syson Report is

17

based on inadequate evidence, Maui Windsurfing has failed to establish a

necessary predicate to this argument -- i.e., that Syson needed to inspect the subject

vehicle to render an opinion regarding what Plaintiffs allege is a generic design

defect.  Syson inspected example Ford Focus vehicles and doors as well as pictures

of the subject vehicle, and Maui Windsurfing has failed to explain why this

evidence is insufficient to render an opinion.

  As to Maui Windsurfing's second argument that Plaintiffs should be

sanctioned for failing to preserve the subject vehicle, "[a] federal trial court has the

inherent discretionary power to make appropriate evidentiary rulings in response to

the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d

1318, 1329 (9th Cir. 1993).  This power includes the ability to exclude certain

evidence, permit a jury to draw an adverse inference from the destruction, or even

dismiss claims.  *Id.*; *see also Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th

Cir. 2001).  "Dismissal should be avoided if a lesser sanction will perform the

necessary function" of leveling the evidentiary playing field and sanctioning

improper conduct.  *Id.* at 590.

  Maui Windsurfing provides no information regarding the

circumstances of the subject vehicle's destruction and it appears that Maui

Windsurfing has available to it the same evidence available to Plaintiffs.  In fact,

Empire Fire & Marine Insurance Company, Maui Windsurfing's insurer, caused

the subject vehicle to be destroyed in January 2007. *See* Ford Ex. C at

Empire_003. The mere circumstances that Plaintiffs did not file this action until

two years after the accident and that the subject vehicle -- a car owned by Maui

Windsurfing -- was subsequently destroyed, do not support the extraordinary

sanction of dismissing Plaintiffs' strict liability claim.[4]

> b.  *Whether the Rental Contract bars Plaintiff's negligence and strict liability claims*

Maui Windsurfing argues that provisions 4, 5, and 6 of the Rental

Contract bar Plaintiffs' negligence and strict liability claims against it as a matter

of law. The court rejects this argument for several reasons.

As an initial matter, Maui Windsurfing provides (1) scant explanation

of the law governing the construction of rental contracts, (2) no explanation and/or

proposed construction of the specific language of each paragraph, and (3) no

analysis of how each paragraph, given the evidence in this action, bars Plaintiffs'

claims as a matter of law. Maui Windsurfing has therefore failed to carry its

burden on summary judgment.

---

[4] The court also recognizes that Ford put forth evidence that Maui Windsurfing may have been aware of Plaintiffs' potential claims before the subject vehicle was destroyed and did not take steps to preserve it. *See* Ford Ex. C at Empire_121. Maui Windsurfing's contribution to the destruction of the subject vehicle certainly weighs against the drastic sanction it requests.

In any event, an examination of the language of the identified

paragraphs fails to support that Maui Windsurfing is entitled to summary judgment

as a matter of law.

Paragraph 4 provides:

> Lessee shall indemnify and hold Lessor harmless from all
> fines, penalties, forfeitures and disabilities arising from
> the use of the rented vehicle and imposed by any federal,
> state, county and Municipal Statute and law or insurance
> provision.

Maui Windsurfing Ex. B ¶ 4.  Plaintiffs' claims for negligence and strict liability

are not "fines, penalties, forfeitures or disabilities," and are therefore not addressed

in paragraph 4.  Further, even if paragraph 4 could potentially be construed to

include Plaintiff's claims against Maui Windsurfing, "contracts of indemnity are

strictly construed, particularly where the indemnitee claims that it should be safe

from its own negligence."  *Kamali v. Haw. Elec. Co.*, 54 Haw. 153, 161, 504 P.2d

861, 866 (1972).  A strict construction of paragraph 4 falls far short of barring

Plaintiff's claims.

Paragraph 5 provides:

> Lessee may be fully liable for all collision, fire, and theft
> damages and all other loss, if vehicle is used, operated, or
> driven in violation of any of the provisions of this
> agreement, or if lessee uses drives or permits operation of
> the rented vehicle under the influence of drugs or alcohol
> or in violation of the criminal or motor vehicle statutes,

or is grossly negligent in the use of the vehicle.
. . .

Maui Windsurfing Ex. B ¶ 4.  This paragraph does not limit Plaintiffs' claims

against Maui Windsurfing for negligence or strict liability.  Rather, this paragraph

addresses the Durhams' liability to Maui Windsurfing should they violate the terms

of the Rental Contract, operate the vehicle under the influence of drugs or alcohol,

violate motor vehicle statutes, or act grossly negligent.  Further, even if this

paragraph could be construed as potentially limiting Plaintiffs' claims, Maui

Windsurfing presented no evidence whatsoever that Mark Durham was under the

influence of drugs or alcohol or was grossly negligent in using the vehicle.[5]  Maui

Windsurfing has therefore failed to carry its burden that this paragraph bars

Plaintiffs' claims.

Finally, paragraph 6 provides:

Liability Insurance.  Anyone driving the car as permitted
by this agreement will be protected against liability for
causing bodily injury or death to others or damaging the
property of someone other than the driver and/or renter
up to the minimum of financial responsibility limits
required by applicable law.  The limit for bodily injury
sustained by one person includes any claim for loss of
that person's consortium or service. . . .  I understand that

---

[5]  While the police report indicates that Mark Durham ran a stop sign at the intersection
of Pulehu Road and Hansen Road, *see* Pls.' Ex. 1, Maui Windsurfing did not present this
evidence to the court and Plaintiffs assert that the intersection was inherently unsafe and
dangerous.  *See* SAC ¶¶ 43-44.

> unless required by applicable law, you will not provide
> (a) Coverage for fines, penalties, punitive or exemplary
> damages (b) Coverage for bodily injury, or death of
> myself while not a driver, or any member of my family or
> the driver's family (c) Defense against any claim after
> applicable limits of coverage that you furnish have been
> tendered. (d) supplementary no fault, non-compulsory
> uninsured or under insured motorist coverage, and any
> other optional or rejectable coverage and you and I reject
> all such coverage to the extent permitted by law.

*Id.* ¶ 6. Paragraph 6 addresses the liability insurance available to the Durhams as the drivers of the vehicle, should either of them face a claim for bodily injury, death, or damage to property. A plain reading of this paragraph does not, however, suggest that it addresses the liability insurance available to Maui Windsurfing for claims that the Durhams may bring against it. Accordingly, this paragraph does not bar Plaintiffs' claims as a matter of law either.

In sum, Maui Windsurfing has failed to carry its burden of showing that the Rental Contract bars Plaintiffs' claims for negligence and strict liability. The court therefore DENIES Maui Windsurfing's Motion for Summary Judgment on Plaintiffs' negligence and strict liability claims.

## 2.   *Plaintiffs' Claims for Wrongful Death and Survival*

Maui Windsurfing argues that Plaintiffs' claims for wrongful death and survival must be dismissed because they are barred by paragraph 6 of the Rental Contract and are otherwise derivative of the negligence and strict liability

claims.  As described above, however, paragraph 6 addresses the liability insurance available to the Durhams as the drivers of the subject vehicle and not the liability insurance available to Maui Windsurfing for claims against it.  Further, because the court denies Maui Windsurfing's Motion for Summary Judgment on the negligence and strict liability claims, Plaintiffs' claims for wrongful death and survival still stand.  The court therefore DENIES Maui Windsurfing's Motion for Summary Judgment on Plaintiffs' wrongful death and survival claims.

## B.    Maui Windsurfing's Motion for Summary Judgment Against Ford

Maui Windsurfing seeks summary judgment on its cross-claim against Ford for contribution and indemnity should Maui Windsurfing be found liable to Plaintiffs on the basis that there is no genuine issue of material fact that Ford failed to provide any notice of any defect of the subject vehicle to Maui Windsurfing and that Maui Windsurfing regularly serviced and maintained the subject vehicle.[6]  In opposition, Ford argues, among other things, that Maui Windsurfing's Motion is

---

[6] For the first time in its Motion, Maui Windsurfing argues that Ford must not only indemnify it, but that Ford also has a duty to defend it. Maui Windsurfing's Cross-Claim, however, does not assert that Ford has a duty to defend and thus, such claim is not properly before the court.  *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("[O]ur precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such a claim in a summary judgment motion is insufficient to present the claim to the district court."); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) (holding that where the plaintiffs advanced an additional theory of liability for the first time in their motions for summary judgment, the defendants were not put on notice of the need to defend against that claim, and the district court did not err in not allowing that claim to proceed).

premature because there is no determination of liability as to Maui Windsurfing on Plaintiffs' claims.

A claim for contribution and/or indemnity ripens into a cause of action only after a joint-tortfeasor pays more than his proportionate share of the underlying claims.  Specifically, the Restatement (Third) of Torts provides that a claim for indemnity or contribution occurs "[w]hen two or more persons are or may be liable for the same harm and one of them discharges the liability of another in whole or in part."  Restatement (Third) of Torts §§ 22-23 (2000); *see also Brooks v. Dana Nance & Co.*, 113 Haw. 406, 417, 153 P.3d 1091, 1102 (2007) (quoting § 22 of the Restatement (Third) of Torts with approval); *Albert v. Dietz*, 283 F. Supp. 854, 856-57 (D. Haw. 1968) ("[W]hile the right of contribution by the joint tortfeasors does arise at the time of the concurring independent acts, nevertheless until one of those joint tortfeasors pays more than his proportionate share of the underlying claim, the right remains contingent and inchoate.  It is not until a tortfeasor pays more than his proportionate share that the right ripens into a cause of action.").

Maui Windsurfing has not yet been, and might not be, found liable on Plaintiffs' claims.  Accordingly, its Motion for Summary Judgment for contribution and indemnity from Ford on Plaintiffs' claims is premature.  *See, e.g.,*

24

*Doe v. City of Chicago*, 360 F.3d 667, 672 (7th Cir. 2004) ("We have warned repeatedly against trying to resolve indemnity before liability."); *Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 143 F. Supp. 2d 336, 344 (S.D.N.Y. 2001) (finding summary judgment for indemnitee premature because right to indemnity is dependent upon jury finding of negligence); *Fidelity & Deposit Co. of Md. v. Curtis Day & Co.*, 1993 WL 128073, at *14 (N.D. Cal. Apr. 21, 1993) ("Because summary judgment on the issue of defendant's negligence is inappropriate, a determination of the right to equitable indemnity is also premature.").

In opposition, Maui Windsurfing acknowledges that a claim for indemnity and/or contribution does not ripen into a cause of action until a joint tort-feasor pays more than its proportionate share of the claim, but nonetheless argues that "[t]he undisputed issue is Maui Windsurfing's right to indeminity [sic] from Ford, not whether such a right has already ripened."  Doc. No. 631, Maui Windsurfing Reply 5.  Maui Windsurfing effectively asks the court to make a determination of liability even though it is contingent on an event that might occur in the future.  The court cannot make such advisory opinions.  The court therefore DENIES Maui Windsurfing's Motion for Summary Judgment on its Cross-Claim against Ford.

25

# V.  <u>CONCLUSION</u>

Based on the above, the court DENIES Maui Windsurfing's Motion for Summary Judgment on Counts IV and IX and its Counterclaim (Doc. No. 515), and DENIES Maui Windsurfing's Motion for Summary Judgment on its Cross-Claim against Ford (Doc. No. 525).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 21, 2010.



 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Durham et al. v. County of Maui et al.*, Civ. No. 08-00342 JMS/LEK, Order (1) Denying Defendant Maui Windsurfing Vans, Inc.'s Motion for Summary Judgment as to Counts IV and IX of Plaintiffs' Second Amended Complaint, and for Summary Judgment on its Counter Claim Against Plaintiffs (Doc No. 515); and (2) Denying Defendant Maui Windsurfing Vans, Inc.'s Motion for Summary Judgment as to its Cross-Claim Against Ford Motor Company (Doc No. 525)