IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHERI GAIL DURHAM, Individually and as next of Friend of MARISA UMA LAMA DURHAM, MINOR ET AL.,<br><br>           Plaintiffs,<br><br>    vs.<br><br>COUNTY OF MAUI, ET AL.<br><br>           Defendants.<br>_____ | CIV. NO. 08-00342 JMS/LEK<br><br>ORDER DENYING FORD MOTOR COMPANY'S MOTION TO DISMISS OR, ALTERNATIVELY, EXCLUDE CERTAIN EVIDENCE AND ENTER AN ADVERSE INSTRUCTION AGAINST PLAINTIFFS (DOC. NO. 529) |

**<u>ORDER DENYING FORD MOTOR COMPANY'S MOTION TO DISMISS OR, ALTERNATIVELY, EXCLUDE CERTAIN EVIDENCE AND ENTER AN ADVERSE INSTRUCTION AGAINST PLAINTIFFS (DOC. NO. 529)</u>**

**I. <u>INTRODUCTION</u>**

This action arises from a July 26, 2006 two-car accident between a 2004 Ford Focus station wagon (the "subject vehicle") driven by Mark Durham and rented from Maui Windsurfing Vans, Inc. ("Maui Windsurfing"), and a 2003 Hyundai Santa Fe Sport Utility Vehicle ("SUV") driven by Patty Conte. Mark Durham passed away as a result of his injuries in the accident. His daughters, Jessica and Marisa, both passengers in the subject vehicle, also sustained injuries and Jessica passed away over two years later.

As a result of this accident, Plaintiffs Sheri Gail Durham ("Sheri Durham"), individually and as next friend of Marisa Durham, and Denise Ann Jenkins ("Jenkins"), as the Administrator of the Estates of Mark Durham and Jessica Durham, (collectively "Plaintiffs"), allege that the subject vehicle was defective because it lacked side airbags and its side structure and seat belts in concert with the seats did not reasonably minimize head and chest injuries in side impact collisions involving SUVs.  Plaintiffs therefore allege product defect claims against Ford Motor Company ("Ford") for negligence, gross negligence, strict liability, and survival and wrongful death (Counts III, V, and IX of the Second Amended Complaint ("SAC")).

The subject vehicle was destroyed after Maui Windsurfing's insurance company released it and before this action was commenced.  In its  Motion to Dismiss or, Alternatively, Exclude Certain Evidence and Enter an Adverse Instruction Against Plaintiffs ("Ford's Spoliation Motion"), Ford argues that Plaintiffs should be sanctioned for failing to preserve the subject vehicle.  Doc. No. 529.  Because the court finds no evidence that Plaintiffs knew or reasonably should have known that the subject vehicle was relevant at the time it was destroyed, the court DENIES Ford's Spoliation Motion.

## II. **BACKGROUND**

A. **Factual Background**

This action arises from a July 26, 2006 two-car accident at the intersection of Pulehu Road and Hansen Road in the County of Maui. Mark Durham was driving the subject vehicle on Pulehu Road with his two minor daughters, Jessica and Marisa. From the police investigation, it appears that Mark Durham failed to heed a stop sign at the intersection with Hansen Road, resulting in the SUV driven by Patty Conte on Hansen Road hitting the subject vehicle on its left side. Ford Ex. A. Mark Durham passed away as a result of his injuries in the accident. Jessica and Marisa also sustained injuries, and Jessica passed away over two years later.

Mark Durham rented the subject vehicle from Maui Windsurfing. At the time of the accident, Maui Windsurfing was insured by Empire Fire & Marine Insurance Company ("Empire") and Zurich North America ("Zurich"). Empire put the subject vehicle "on hold" to prevent its destruction and retained an insurance adjustor agency, Branvold & Associates ("Branvold"), to investigate the accident. *See* Doc. No. 614, Ex. C at Empire_118, 162. Branvold subsequently inspected both the subject vehicle and Conte's vehicle, and offered to retain a mechanical engineer to inspect the subject vehicle for defects. *Id.* at Empire_117-21.

On September 19, 2006, Branvold contacted Jenkins. Jenkins requested that contacts go through her because Sheri Durham was very busy -- she was spending nights at the hospital with Jessica while at the same time trying to reenter the job market to support her family. *Id.* at Empire_124; *see also* Sheri Durham Jan. 12 Decl. ¶ 4 (stating that following the accident until December 2008, she was mourning the death of her husband and caring for Jessica, who required extensive medical care for her injuries); Jenkins Decl. ¶ 4 (same). Jenkins indicated that Brandvold should contact her via email because she was spending most days at the hospital with Jessica and was also taking care of Marisa. Doc. No. 614, Ex. C at Empire_125-26. Because Brandvold lacked authority from Empire, it did not discuss insurance benefits with Jenkins. *Id.* at Empire_126.

On October 18, 2006, Brandvold submitted a report to Empire and Maui Windsurfing stating, among other things, that it found no negligence or liability by Maui Windsurfing. *Id.* at Empire_160. The report warned, however, that claims against Maui Windsurfing could nonetheless follow and the statute of limitations for bodily injury liability is two years (1) from the date of loss, (2) from the last payment of personal injury protection benefits, or (3) after the child reaches 18 years. *Id.* Despite this information, on November 13, 2006, Empire authorized Insurance Auto Auctions to sell the subject vehicle for salvage. *Id.* at Empire_3, 7.

After the subject vehicle did not sell, it appears that it was shredded in January 2007.[1] *Id.* at Empire_3.

Neither Maui Windsurfing, Empire, nor anyone else ever contacted Sheri Durham or Jenkins to inspect the subject vehicle, suggested that Plaintiffs consider evaluating the subject vehicle for defects, or suggested that the subject vehicle could or should be preserved for future litigation purposes. Sheri Durham Jan. 12 Decl. ¶ 5; Jenkins Decl. ¶ 5. Further, Durham and Jenkins assert that they did not form any mental impressions that there might have been possible problems with the subject vehicle until after they met with Chaiken & Chaiken, P.C. in February and March 2008. Sheri Durham Jan. 12 Decl. ¶ 7; Jenkins Decl. ¶ 7.

Plaintiffs were, however, previously represented by another law firm beginning on January 24, 2007. *See* Pls.' Suppl. Opp'n Ayres Decl. ¶ 5; *see also* Ford Reply Ex. L. Plaintiffs also filed a friendly suit in Texas state court to settle Jessica and Marisa's claims against Mark Durham's insurance company, and requested a guardian ad litem to represent the girls in that action in November 2007. *See* Ford Reply Exs. M, N.

Sheri Durham first learned that the subject vehicle was destroyed in May 2008 after her counsel made a request for access to the subject vehicle. Sheri

---

[1] Conte's vehicle was destroyed on September 30, 2006. Doc. No. 614, Ex. C at Empire_160.

Durham ¶ 10. Prior to that time, neither Jenkins nor Durham was given any notice of an intent to destroy the subject vehicle. *Id.* ¶ 11; Jenkins Decl. ¶ 9.

**B.     Procedural History**

On July 24, 2008, Plaintiffs filed this action. Plaintiffs' SAC alleges claims against Ford for negligence, gross negligence, strict liability, and derivative claims for wrongful death and survivorship, all relating to alleged design defects in the subject vehicle.[2]

On December 2, 2009, Ford filed its Spoliation Motion. On January 12, 2010, Plaintiffs filed an Opposition, and on January 19, 2010, Ford filed its Reply. With permission of the court, Plaintiffs filed a Supplemental Response on January 28, 2010. A hearing was held on February 8, 2010.

### III. DISCUSSION

Ford argues that Plaintiffs should be sanctioned for failing to preserve the subject vehicle before filing this action. The court outlines the proper framework for addressing Ford's argument and then applies this framework to the

---

[2] The SAC also alleges claims against Maui Windsurfing for negligence, strict liability, and survival and wrongful death, the County of Maui for road defect and dangerous conditions at the accident scene, medical malpractice claims related to the care provided to Jessica against Kapiolani Medical Center for Women and Children, Hawaii Pacific Health, Dr. Byron H. Izuka, Byron Izuka, M.D., LLC., Dr. Shila Patel, Kapiolani Medical Specialists, Dr. James Y. Sim, and James Y. Sim, M.D., LLC. The SAC further alleges claims against Conte, but she is no longer a party to this action.

facts presented.

**A.     Spoliation Framework**

Ford argues that its Spoliation Motion is governed, at least in part, by Hawaii law. Contrary to its assertions, however, Hawaii law applies only if Ford asserts an actual claim for spoliation, which it did not. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) (applying federal law in addressing spoliation argument); *see also Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) (joining the Second, Fourth, and Ninth Circuits in holding that federal law governs spoliation sanctions); Ford Mot. 5 (citing Ninth Circuit cases applying state law to state law claims of spoliation). Rather, where a spoliation claim has not been alleged, the court has two sources of authority to issue sanctions -- Federal Rule of Civil Procedure 37, and its inherent authority to impose sanctions. *See Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Rule 37, which applies only where a party has failed to comply with a court order or permit discovery, does not apply to these facts. The court therefore outlines the contours of its inherent sanctioning authority.

In general, a party has a "duty to preserve evidence when it knows or reasonably should know the evidence is relevant and when prejudice to an opposing party is foreseeable if the evidence is destroyed." *Lewis v. Ryan*,

261 F.R.D. 513, 518 (S.D. Cal. Oct. 23, 2009) (citing *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998)); *see also Performance Chevrolet, Inc. v. Market Scan Info. Sys.*, 2006 WL 1042359, at *1 (D. Idaho Apr. 18, 2006) ("The majority of courts have held that pre-litigation destruction can constitute spoliation when litigation was 'reasonably foreseeable' but not where it was 'merely possible.'" (citations omitted)). Where a party breaches this duty and relevant evidence is destroyed, "[a] federal trial court has the inherent discretionary power to make appropriate evidentiary rulings." *Glover*, 6 F.3d at 1329. A finding of bad faith is not required for the court to impose sanctions, and "simple notice of 'potential relevance to the litigation'" will suffice. *Id.* (quoting *Akiona v. United States*, 938 F.2d 158 (9th Cir. 1991)).

The court has available to it a number of sanctions, and may (1) exclude evidence, (2) admit evidence of the circumstances of the spoliation, (3) instruct the jury that it may infer that the spoiled evidence would have been unfavorable to the responsible party, or even (4) dismiss claims. *See Peschel v. City of Missoula*, --- F. Supp. 2d ---, 2009 WL 3364460, at *3 (D. Mont. Oct. 15, 2009) (citing *Glover*, 6 F.3d at 1329). The drastic sanction of dismissal, however, is available only when "'a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings.'" *Leon*, 464 F.3d at 958

(quoting *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)). In other words, the court must make a finding of willfulness, fault, or bad faith before dismissing claims. *Id.*

**B.    Application of Framework**

The framework makes clear that sanctions are appropriate only if the party at issue had knowledge and/or notice that the destroyed evidence is relevant to potential litigation. The evidence does not support such finding.

As an initial matter, the evidence does not support a finding of willfulness, fault, or bad faith on behalf of Plaintiffs that would support the drastic remedy of dismissal that Ford seeks. Rather, the evidence presented establishes that before the subject vehicle was destroyed, Plaintiffs did not own the subject vehicle, did not have control of the subject vehicle, and were not even aware that they may have a products defects claim. Specifically, Maui Windsurfing and its insurance company Empire, not Plaintiffs, had control of the subject vehicle after the accident. Further, Maui Windsurfing, not Plaintiffs, had notice that the subject vehicle may be relevant to potential liability claims and that those claims may not be asserted for more than two years after the accident. *See* Doc. No. 614, Ex. C at Empire_160.

Between the time of the accident and when the subject vehicle was

9

shredded -- a period of only five months -- Plaintiffs were mourning the loss of Mark Durham and taking care of Jessica, who was critically injured and receiving substantial hospital care. *Id.* Empire_124; *see also* Sheri Durham Jan. 12 Decl. ¶ 4; Jenkins Decl. ¶ 4. While Maui Windsurfing's insurance adjuster spoke with Jenkins, nobody on behalf of Maui Windsurfing or Empire ever (1) contacted Plaintiffs to determine whether they wanted to inspect the subject vehicle, (2) suggested that Plaintiffs consider evaluating the subject vehicle for defects, or (3) suggested that the subject vehicle could or should be preserved for future litigation purposes. Sheri Durham Jan. 12 Decl. ¶ 5; Jenkins Decl. ¶ 5. It was not until they met with counsel in February and March 2008 that Plaintiffs formed any mental impressions that there might have been possible problems with the subject vehicle. Sheri Durham ¶ 7; Jenkins Decl. ¶ 7. By that time, however, Empire had already allowed the subject vehicle to be destroyed. Given these facts, the court finds that Plaintiffs did not have notice that they may have legal claims in which the subject vehicle was relevant until well after it had already been destroyed. Accordingly, a dismissal sanction is simply not appropriate.

       The court also rejects Ford's alternative requested sanction of excluding evidence and entering an adverse inference instruction. The purpose of such sanctions are based on two rationales: (1) "the common sense observation that

a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy it," *Millenkamp v. Davisco Foods Int'l, Inc.*, 562 F.3d 971, 981 (9th Cir. 2009) (quotations omitted); and (2) that "allowing the trier of fact to draw an adverse inference presumably deters parties from destroying relevant evidence before it can be introduced at trial." *Id.* (quotations omitted). Both rationales rest on the assumption "that the evidence-destroying party knew of impending litigation that would render the evidence relevant." *Id.* As explained above, however, the evidence does not support such finding and therefore Ford is not entitled to these alternative sanctions either.

In opposition, Ford argues that sanctions are appropriate because "Sheri Durham admitted in deposition that she believed there were design problems with the vehicle from around the time of July 26, 2006 accident when she testified that she knew 'initially' and 'near the beginning' that Plaintiffs had complaints about the design of the vehicle." Ford Spoliation Mot. 6-7. Contrary to Ford's contentions, however, Sheri Durham did not testify that at around the time of the accident she believed the subject vehicle had design problems.

Specifically, Sheri Durham answered the following questions as

11

follows:

> Q. Do you have any complaints regarding the vehicle Mark Durham was driving on the day of the accident?
> . . .
> A. Well, it was an older vehicle, been used by a lot of wind surfers. It was, you know, an old, used windsurfing vehicle. It had its issues.
> Q. What were the issues it had?
> A. I don't know all of the issues. Obviously, there wasn't a functioning air bag, side air bag to save him from impact. I question the seat belt that Jessica was in. I'm concerned -- at some point, it was mentioned to me by someone that possibly the seat broke loose upon impact and crushed her further. She was sitting behind him. All of those are complaints about the vehicle.
> . . .
> Q. Do you recall when you learned [that the seat might have broken and gone back on Jessica]?
> A. Initially, you know, near the beginning, I guess.

Ford Ex. F at 93-94.

This testimony supports that the only "complaint" Sheri Durham may have been aware of before the subject vehicle was destroyed was that a seat might have broken loose upon impact. Sheri Durham's awareness of this fact does not establish that she had notice of her claims -- there is no evidence that Sheri Durham believed the seat breaking loose was indeed a design defect or that this

issue could be the basis of a lawsuit.[3] *See* Sheri Durham Jan. 12 Decl. ¶¶ 9-10.

Ford also argues that Plaintiffs had notice of their claims earlier than their declarations suggest because they hired counsel previous to their present counsel, and entered a settlement with Mark Durham's insurance company.[4] Ford's argument is unsupported by the evidence. The accident occurred on July 26, 2006, and the subject vehicle was destroyed in early January 2007. Doc. No. 614, Ex. C at Empire _3. During this time, Sheri Durham was mourning the death of her husband and caring for Jessica in the hospital. Sheri Durham Jan. 12 Decl. ¶ 4. It was not until January 24, 2007 that Sheri Durham first contacted an attorney, and they did not discuss any potential liability claims. *See* Pls.' Suppl. Opp'n Ayres Decl. ¶¶ 5-6. Simply put, there is no evidence that Plaintiffs had notice of their claims before the subject vehicle was destroyed. The court therefore DENIES Ford's Spoliation Motion.

---

[3] Ford argues that the court should follow *Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001), which dismissed a vehicle defect action after the plaintiff failed to preserve the vehicle. While the plaintiff in *Silvestri* did not own the vehicle, the remaining facts are wholly distinguishable. *Silvestri* found that dismissal was appropriate where the vehicle was destroyed even though plaintiff, his attorney, and his retained experts all had access to the vehicle and plaintiff recognized that he would bring suit against General Motors. *Silvestri*, 271 F.3d at 591.

[4] During the hearing, Ford went so far as to argue that the court should apply the sham affidavit rule to Sheri Durham's and Jenkins' Declarations. The sham affidavit rule, providing that "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony," *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991), has no application to this case. The court has reviewed Sheri Durham's deposition testimony and declarations, and finds no contradictions that would trigger this rule.

## IV.  **CONCLUSION**

Based on the above, the court DENIES Ford's Spoliation Motion.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 9, 2010.



  /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Durham et al. v. County of Maui et al.*, Civ. No. 08-00342 JMS/LEK, Order Denying Ford Motor Company's Motion to Dismiss Or, Alternatively, Exclude Certain Evidence and Enter an Adverse Instruction Against Plaintiffs (Doc. No. 529)