IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SHERI GAIL DURHAM, Individually and as next of Friend of MARISA UMA LAMA DURHAM, MINOR ET AL., | ) ) ) ) | CIV. NO. 08-00342 JMS/LEK |
| Plaintiffs, | ) ) ) ) | ORDER: (1) DENYING PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS, DOC. NO. 859, SEEKING ENTRY OF JUDGMENT AS TO LIABILITY |
| vs. | ) ) | AGAINST MAUI WINDSURFING VANS, INC., AND (2) DENYING |
| COUNTY OF MAUI, ET AL. | ) ) | WITHOUT PREJUDICE PLAINTIFFS' MOTION FOR |
| Defendants. | ) ) ) | SPOLIATION SANCTIONS, DOC. NO. 859, SEEKING AN ADVERSE |
| _____ | ) | INFERENCE JURY INSTRUCTION |

## ORDER: (1) DENYING PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS, DOC. NO. 859, SEEKING ENTRY OF JUDGMENT AS TO LIABILITY AGAINST MAUI WINDSURFING VANS, INC., AND (2) DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS, DOC. NO. 859, SEEKING AN ADVERSE INFERENCE JURY INSTRUCTION

## I. INTRODUCTION

This action arises from a July 26, 2006 two-car accident between a

2004 Ford Focus station wagon (the "vehicle") driven by Mark Durham and rented

from Maui Windsurfing Vans, Inc. ("Maui Windsurfing"), and a 2003 Hyundai

Santa Fe Sport Utility Vehicle ("SUV") driven by Patty Conte.  Mark Durham

passed away as a result of his injuries in the accident.  His daughters, Jessica and

Marisa, both passengers in the vehicle, also sustained injuries and Jessica passed

away over two years later.

As a result of this accident, Plaintiffs Sheri Gail Durham ("Sheri Durham"), individually and as next friend of Marisa Durham, and Denise Ann Jenkins ("Jenkins"), as the Administrator of the Estates of Mark Durham and Jessica Durham, (collectively "Plaintiffs"), allege that the vehicle was defective because it lacked side airbags and its side structure and seat belts in concert with the seats did not reasonably minimize head and chest injuries in side impact collisions involving SUVs.  Plaintiffs therefore allege product defect claims against Maui Windsurfing for negligence, strict liability, and survival and wrongful death.

The vehicle was destroyed after Maui Windsurfing's insurance company released it and before this action was commenced.  In their Motion for Spoliation Sanctions ("Plaintiffs' Spoliation Motion"), Plaintiffs argue that the court should sanction Maui Windsurfing for failing to preserve the vehicle by entering judgment as to the issue of liability against Maui Windsurfing.  Doc. No. 859.  Based on the following, the court DENIES Plaintiffs' Spoliation Motion to the extent it seeks judgment on liability against Maui Windsurfing, and DENIES Plaintiffs' Spoliation Motion to the extent it seeks an adverse inference instruction against Maui Windsurfing without prejudice to Plaintiffs raising this issue at trial.

## II. BACKGROUND

### A.  Factual Background

On July 1, 2006, Mark Durham entered into a one-month rental agreement with Maui Windsurfing for the vehicle.  *See* Maui Windsurfing Ex. A at Empire_45-46.  On July 26, 2006, Mark Durham was driving the vehicle on Pulehu Road with his two minor daughters, Jessica and Marisa, when he was broadsided by Conte's SUV at the intersection of Pulehu Road and Hansen Road.  *See* Maui Windsurfing Ex. B at Empire_287.  From the police investigation, it appears that Mark Durham failed to heed a stop sign at the intersection with Hansen Road.  *See* Maui Windsurfing Ex. H.  Mark Durham passed away as a result of his injuries in the accident.  Jessica and Marisa also sustained injuries, and Jessica passed away over two years later.

After learning of the accident, Maui Windsurfing reported the accident to its insurer, Empire Fire & Marine Insurance Company ("Empire").  *See* Maui Windsurfing Opp'n Truitt Decl. ¶¶ 2-3.  Empire's initial notes on the vehicle state "[n]eed to put a hold on this vehicle.  There was a fatality and liability is investigating.  I have not received the actual appraisal yet but per the appraiser the vehicle is a total loss."  Maui Windsurfing Ex. A at Empire_003.  A further notation, dated August 7, 2006, states that Empire had requested that Insurance

3

Auto Auctions secure the vehicle and "cover it for a investigation." *Id.* The appraiser, Crawford & Company ("Crawford") subsequently took photographs of the vehicle and prepared an appraisal report, finding the vehicle to be a total loss. Maui Windsurfing Exs. C, D.

On August 10, 2006, Empire retained an insurance adjustor agency, Branvold & Associates ("Branvold"), to investigate the accident. *See* Pls.' Ex. B at Empire_118, 162.  Empire requested Branvold to, among other things, inspect the vehicle for "visible defects," visit the Durhams and "find family members there to talk to about the girl's injuries," and provide Empire with the police report and scene photographs. *Id.* at Empire_162.  Branvold subsequently inspected both the vehicle and Conte's vehicle, photographed the vehicles and the accident scene, interviewed Conte, and offered to retain a mechanical engineer to inspect the vehicle for defects.  Pls.' Ex. B at Empire_117-21; Maui Windsurfing Exs. E, F, G, B at Empire_212-221, 241-283.

On September 19, 2006, Branvold contacted Jenkins.  Jenkins requested that contacts go through her because Sheri Durham was very busy -- she was spending nights at the hospital with Jessica while at the same time trying to reenter the job market to support her family.  Maui Windsurfing Ex. A at Empire_124; *see also* Pls.' Ex. D, Sheri Durham Jan. 12 Decl. ¶ 4 (stating that

following the accident until December 2008, she was mourning the death of her husband and caring for Jessica, who required extensive medical care for her injuries); Pls.' Ex. E, Jenkins Decl. ¶ 4 (same).  Jenkins indicated that Brandvold should contact her via email because she was spending most days at the hospital with Jessica and was also taking care of Marisa.  Maui Windsurfing Ex. A at Empire_125-26.  Because Brandvold lacked authority from Empire, it did not discuss insurance benefits with Jenkins.  *Id.* at Empire_126.

On October 18, 2006, Brandvold submitted a report to Empire and Maui Windsurfing stating, among other things, that it found no negligence or liability by Maui Windsurfing.  *Id.* at Empire_160.  The report warned, however, that claims against Maui Windsurfing could nonetheless follow and the statute of limitations for bodily injury liability is two years (1) from the date of loss, (2) from the last payment of personal injury protection benefits, or (3) after the child reaches 18 years.  *Id.*  The report further requested that if Maui Windsurfing is served with a lawsuit, it should contact Empire and Mark Durham's personal auto insurer so that an answer could be timely filed.  *Id.*  Finally, it mentioned that Maui Windsurfing had received medical bills for Jessica and had forwarded them to Empire.  *Id.*

In addition to Branvold's report warning of potential litigation, Al

West, Maui Windsurfing's corporate representative, testified that he contacted

Empire in late August or September to urge it not to destroy the vehicle:

> Q:     Have you spoke to anyone at your insurance
>        company regarding its decision to dispose of that
>        2004 Ford Focus that's the subject of this suit?
> A.     Yes.
> . . .
> Q:     Do you recall when you had that conversation?
> A:     It was probably in late August or early September,
>        I'm not sure which.
> Q:     Of what year?
> A:     '06.
> Q:     And could you tell me what you said to them and
>        they to you regarding that subject?
> A:     Well, the tow company called me and told me that,
>        that he -- and I -- that the car was going to be
>        destroyed.  And I called the insurance company
>        and I, I don't remember exactly what I said, but the
>        crux of it was I urged them to not destroy the car.
>        I did not want to have the car destroyed.
> . . .
> Q:     Now, what did that person at Empire that you
>        spoke to say in response to you urging them not to
>        destroy the car?
> A:     Well, I wasn't urging them, I was asking them if
>        they had, had that plan.  And I don't remember the
>        exact words, but I -- my advice to them was to, to
>        save it for investigation.

Pls.' Ex. C, West Depo. 132:2-134:5.

> Q:     All right.  Where did you develop that
>        appreciation, if anywhere, to, to preserve or for a
>        need to potentially preserve the vehicle, do you
>        recall?
> A:     You mean from the accident?  Yeah.

6

> Q:   Yes, sir.
> A:   I was a police officer for three and a half years.  I investigated hundreds of accidents.  I, I believed that it was important to keep the evidence.

*Id.* at 144:10-19.  Maui Windsurfing apparently had these concerns, despite maintaining the vehicle in good condition and despite Al West's belief that the vehicle had no defects.  *See* Pls.' Ex. B at Empire_121.

Despite the Branvold Report and Al West's concerns about keeping the vehicle, Empire obtained title to the vehicle and on November 13, 2006, Empire authorized Insurance Auto Auctions to sell the vehicle for salvage.  Pls.' Ex. B at Empire_3, 7.  After the vehicle did not sell, it appears that it was shredded in January 2007.  *Id.* at Empire_3.

Neither Maui Windsurfing, Empire, nor anyone else ever contacted Sheri Durham or Jenkins to inspect the vehicle, suggested that Plaintiffs consider evaluating the vehicle for defects, or suggested that Plaintiffs should attempt to preserve the vehicle for future litigation purposes.  Pls.' Ex. D, Sheri Durham Jan. 12 Decl. ¶ 5; Pls.' Ex. E, Jenkins Decl. ¶ 5.  Further, Sheri Durham and Jenkins assert that they did not form any mental impressions that there might have been possible problems with the vehicle until after they met with Chaiken & Chaiken, P.C., in February and March 2008.  Pls.' Ex. D, Sheri Durham Jan. 12 Decl. ¶ 7; Pls.' Ex. E, Jenkins Decl. ¶ 7.  Indeed, at no time did Jenkins or Sheri

Durham inform Empire of a potential product liability action involving the vehicle. Maui Windsurfing Opp'n Truitt Decl. ¶ 19.

## B.    Procedural History

On July 24, 2008, Plaintiffs filed this action.  Plaintiffs' Second Amended Complaint alleges claims against Maui Windsurfing for negligence, gross negligence, strict liability, and derivative claims for wrongful death and survivorship, all relating to alleged design defects in the vehicle.[1]

On July 7, 2010, Plaintiffs filed their Spoliation Motion.[2]  On August 17, 2010, Maui Windsurfing and Ford Motor Company ("Ford") filed Oppositions, and on August 24, 2010, Plaintiffs filed their Reply.  A hearing was held on September 7, 2010.

---

[1]  The SAC also alleges claims against (1) Ford Motor Company for negligence, gross negligence, strict liability, and survival and wrongful death, (2) the County of Maui for road defect and dangerous conditions at the accident scene, and (3) medical malpractice claims related to the care provided to Jessica against Kapiolani Medical Center for Women and Children, Hawaii Pacific Health, Dr. Byron H. Izuka, Byron Izuka, M.D., LLC., Dr. Shila Patel, Kapiolani Medical Specialists, Dr. James Y. Sim, and James Y. Sim, M.D., LLC.  The SAC further alleges claims against Conte, but she is no longer a party to this action.

[2]  Plaintiffs' Spoliation Motion is the second Motion seeking spoliation sanctions as a result of the destruction of the vehicle.  The court previously denied Ford Motor Company's motion for spoliation sanctions against Plaintiffs for their alleged failure to preserve the vehicle.  *See Durham v. County of Maui*, 2010 WL 520699 (D. Haw. Feb. 10, 2010).
    Plaintiffs request that the court adopt the factual findings made in the earlier order as law of the case, *see* Pls.' Mot. 3, but making such determination is unnecessary for this Order.

# III.  DISCUSSION

Plaintiffs argue that Maui Windsurfing should be sanctioned for failing to preserve the vehicle.  The court outlines the proper framework for addressing Plaintiffs' argument, and then applies this framework to the facts presented.

## A.     Spoliation Framework

Plaintiffs do not allege a separate claim for spoliation, but instead seek sanctions for Maui Windsurfing's failure to preserve the vehicle.[3]  Where a spoliation claim has not been alleged, the court has two sources of authority to issue sanctions -- Federal Rule of Civil Procedure 37 and its inherent authority to impose sanctions.  *See Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  Rule 37, which applies only where a party has failed to comply with a court order or permit discovery, does not apply to these facts.  The court therefore outlines the contours of its inherent sanctioning authority.

---

[3]  Maui Windsurfing argues that the court should deny Plaintiffs' Spoliation Motion because Plaintiffs have not alleged a spoliation claim and they should have filed this motion prior to the dispositive motions deadline.  *See* Maui Windsurfing Opp'n 9-11.  As explained below, however, Plaintiffs are not alleging a spoliation claim and the court determines whether Plaintiffs are entitled to spoliation sanctions based on the court's inherent sanctioning authority. Further, to the extent Maui Windsurfing argues that Plaintiffs should have filed this Motion within the dispositive motions deadline because they are seeking judgment as to liability as a sanction, as described below, the court rejects that such sanction is appropriate under these circumstances.

In general,[4] a party has a duty to preserve evidence when it knows or reasonably should know the evidence is potentially relevant to litigation and when the destruction of that evidence prejudices the opposing party. *See United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (A party "engage[s] in spoliation of [evidence] as a matter of law only if they had some notice that the [evidence was] potentially relevant to . . . litigation before [it was] destroyed."); *Ingham v. United States*, 167 F.3d 1240, 1246 (9th Cir. 1999) ("To be actionable, the spoliation of evidence must damage the right of a party to bring an action.") (citing *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Co.*, 982 F.2d 363, 371 (9th Cir. 1992)).[5]

"If a party breaches its duty to preserve evidence, the opposing party may move the court to sanction the party destroying evidence." *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006) (citing *Unigard Sec. Ins. Co.*, 982 F.2d at 365). Where a party breaches this duty and relevant evidence is destroyed, "[a] federal trial court has the inherent discretionary power

---

[4]  The court previously outlined the relevant framework in *Durham*, 2010 WL 520699, at *3-4. Based on the arguments currently presented, however, the court takes this opportunity to further expand upon this framework.

[5]  The court previously cited *Lewis v. Ryan*, 261 F.R.D. 513, 518 (S.D. Cal. 2009), for the proposition that "a party's duty to preserve evidence when it knows or reasonably should know the evidence is relevant and when prejudice to an opposing party is foreseeable if the evidence is destroyed." To the extent this forward-looking prejudice test conflicts with Ninth Circuit law requiring actual prejudice, the court rejects such proposition.

to make appropriate evidentiary rulings."  *Glover v. BIC Corp.*, 6 F.3d 1318, 1329

(9th Cir. 1993).

   "The duty to preserve material evidence arises not only during

litigation but also extends to that period before the litigation when a party

reasonably should know that the evidence may be relevant to anticipated

litigation."  *World Courier v. Barone*, 2007 WL 1119196, at *1 (N.D. Cal. Apr.16,

2007) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)); *see*

*also Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)

("Spoliation refers to the destruction or material alteration of evidence or to the

failure to preserve property for another's use as evidence in pending or reasonably

foreseeable litigation."); *Performance Chevrolet, Inc. v. Market Scan Info. Sys.*,

2006 WL 1042359, at *1 (D. Idaho Apr. 18, 2006) ("The majority of courts have

held that pre-litigation destruction can constitute spoliation when litigation was

'reasonably foreseeable' but not where it was 'merely possible.'" (citations

omitted)).  In other words, the duty to preserve evidence attaches "when a party

should have known that the evidence may be relevant to future litigation."

*Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).  "The

future litigation must be 'probable,' which has been held to mean 'more than a

possibility.'"[6]  *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d at 1068

(quoting *Hynix Semiconductor Inc. v. Rambus, Inc*., 2006 WL 565893 at *21 (N.D.

Cal. Jan. 5, 2006)).

      A finding of bad faith is not required for the court to impose

sanctions, and "simple notice of 'potential relevance to the litigation'" will suffice.

*Glover*, 6 F.3d at 1329 (quoting *Akiona v. United States*, 938 F.2d 158 (9th Cir.

1991)).  The court has available to it a number of sanctions, and may

(1) exclude evidence, (2) admit evidence of the circumstances of the spoliation,

(3) instruct the jury that it may infer that the spoiled evidence would have been

unfavorable to the responsible party, or even (4) dismiss claims.  *See Peschel v.*

*City of Missoula*, 664 F. Supp. 2d 1137, 1142 (D. Mont. 2009) (citing *Glover*, 6

F.3d at 1329).  The drastic sanction of dismissal, however, is available only when

"'a party has engaged deliberately in deceptive practices that undermine the

integrity of judicial proceedings.'"  *Leon*, 464 F.3d at 958 (quoting *Anheuser-*

*Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)).  In

---

[6]  The court recognizes that some courts have held that spoliation sanctions require notice that the litigation was "imminent."  *See Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008); *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007).  To the extent this language suggests a temporal requirement between the destruction of evidence and the litigation subsequently brought, the court rejects such requirement.  To find otherwise would allow a party, knowing that litigation will occur, to nonetheless destroy evidence so long as the action is not commenced within a certain period of time.

other words, the court must make a finding of willfullness, fault, or bad faith before dismissing claims.  *Id.*

## B.    Application of Framework

The framework makes clear that sanctions are appropriate only if Maui Windsurfing had knowledge and/or notice that the vehicle was relevant to probable litigation, and that Plaintiffs were prejudiced.  The court first addresses Maui Windsurfing's notice, and then the prejudice to Plaintiffs.

### 1.    *Notice*

As to the issue of notice, by the time Empire authorized the vehicle to be sold for salvage -- less than four months after the accident -- Maui Windsurfing and Empire knew that (1) the vehicle sustained substantial damage in a two-car accident, resulting in Mr. Durham's death and major injuries to Jessica; (2) it was possible vehicle defects may have contributed to Plaintiffs' injuries given that Branvold suggested that Empire retain a mechanical engineer to inspect the vehicle for defects and told Maui Windsurfing that Plaintiffs "might want to know whether there was any defect" in the vehicle, *see* Pls.' Ex. B, at Empire_121; and (3) the statute of limitations on any claims Plaintiffs could bring against Maui Windsurfing was two years (a) from the date of loss, (b) from the last payment of personal injury protection benefits, or (c) after Jessica and/or Marisa reach eighteen

years.  The facts also establish that Branvold instructed Maui Windsurfing regarding what steps to take in case it was served with a lawsuit, and Al West, President of Maui Windsurfing, specifically urged Empire not to destroy the vehicle in light of its evidentiary value to potential litigation.

Under these facts, the court finds that Maui Windsurfing had notice that the vehicle would be relevant to probable litigation such that it had a duty to preserve the vehicle and/or take other appropriate steps.  *See Lekkas v. Mitsubishi Motors Corp.*, 2002 WL 31163722, at *3 (N.D. Ill. Sept. 26, 2002) (finding that attorney's request to insurance company to maintain the vehicle "showed that he knew the vehicle had potential evidentiary value").  While Plaintiffs ultimately did not bring this action until almost two years after the accident, this delay did not make litigation any less probable -- Maui Windsurfing and Empire knew that: (1) the accident resulted in loss of life and serious injury, (2) a vehicle defect was possible, but Empire rejected hiring someone to inspect the vehicle, and (3) Maui Windsurfing did not want Empire not to destroy the vehicle due to its evidentiary value.  Despite knowing that the vehicle would be relevant in a probable action by Plaintiffs, Maui Windsurfing took no additional steps to preserve the vehicle, or even to notify Plaintiffs that the vehicle would be destroyed.  *See Silvestri*, 271 F.3d at 591 ("If a party cannot fulfill this duty to preserve because he does not own

or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence."); *cf. Sterbenz v. Attina*, 205 F. Supp. 2d 65, 72-73 (E.D.N.Y. 2002) (finding that insurer defendant acted reasonably and gave a meaningful opportunity to inspect the vehicle where it informed the insured plaintiff that the vehicle would be destroyed and in response plaintiff took no action).

        In opposition, Maui Windsurfing argues that it is not liable because Empire, not Maui Windsurfing, destroyed the vehicle. Maui Windsurfing Opp'n 12-14. This argument elevates form over substance. Maui Windsurfing owned the vehicle at the time of the accident and subsequently transferred title to Empire, thereby allowing Empire to destroy the vehicle. *See* Maui Windsurfing Ex. A at Empire_10-12; *see also* Maui Windsurfing Ex. J, West Depo. 94:23-96:20 (stating that Maui Windsurfing transferred title of the vehicle to Empire to "get[] paid off for the vehicle"). Further, Empire is Maui Windsurfing's insurer and was acting for the benefit of Maui Windsurfing in investigating the accident and ultimately selling the vehicle for salvage. Empire's destruction of the vehicle is therefore imputed on Maui Windsurfing.[7] *See Trull v. Volkswagen of Am., Inc.*, 187 F.3d 88,

---

[7] Maui Windsurfing goes so far as to argue that Empire was not Maui Windsurfing's

(continued...)

95-96 (1st Cir. 1999) (affirming spoliation sanctions where vehicle was in the possession of plaintiff's insurer); *R.A. Siegel Co. v. Bowen*, 539 S.E.2d 873, 876-78 (Ga. App. 2000) (affirming spoliation sanctions where insurer for defendant allowed destruction of vehicle despite preservation order by the court).  To accept Maui Windsurfing's argument would allow an insured to avoid sanctions simply by transferring title to its insurer and having the insurer destroy evidence that the insured knows is relevant.  Such loophole would serve no justifiable purpose.

Maui Windsurfing also argues that it had no notice that litigation was probable because the mere fact the accident occurred is not sufficient to trigger the duty to preserve evidence.  Maui Windsurfing Opp'n 22-29.  Maui Windsurfing ignores the other evidence presented establishing that it had notice of probable

---

[7](...continued)
agent in dealing with the vehicle and determining Maui Windsurfing's potential liability.  The court rejects this argument outright -- Empire was acting for Maui Windsurfing's benefit in determining what occurred in the accident and taking title of the vehicle.  *See also* Pls.' Ex. B at Empire_160 (notifying Maui Windsurfing that if it is sued, "Empire would retain and pay for an attorney to defend [it]").  Further, the cases Maui Windsurfing cites in support of its argument are wholly distinguishable because they do not address the issue of whether an insured should be held liable for an insurer's destruction of evidence.  *See, e.g.*, *State Auto. Mut. Ins. Co. v. Kingsport Dev., LLC*, 846 N.E.2d 974, 987-88 (Ill. App. 2006) (determining whether insurer timely brought declaratory action on duty to defend and indemnify after receiving notice of action against insured); *Lewis v. Super. Ct. of L.A.*, 37 Cal. Rptr. 2d 63, 76 (Cal. App. 1994) (stating that in a dispute over real property, the "well-settled rule is that a title insurance company is not the agent of its insured, and the insurer's knowledge is not imputed to its insured").  Further, even if Maui Windsurfing's argument had any merit whatsoever, spoliation sanctions are still appropriate because Maui Windsurfing knew that "it was important to keep the evidence," *see* Pls.' Ex. C, West Depo. 144:10-19, and participated in the destruction of the vehicle by transferring title to Empire.

16

litigation by Plaintiffs.  As explained above, Branvold suggested that the vehicle be inspected for defects, advised Maui Windsurfing of the statute of limitations for Plaintiffs' claims, and outlined steps for Maui Windsurfing to take if it is sued, and Maui Windsurfing admitted knowing that "it was important to keep the evidence." *See* Pls.' Ex. C, West Depo. 144:10-19.  Under all of these circumstances, the court finds that Maui Windsurfing had a duty to preserve the vehicle or at the very least notify Plaintiffs that the vehicle would be destroyed.[8]

> While not entirely clear, Maui Windsurfing also appears to argue that it had no duty to preserve the vehicle until Plaintiffs gave actual notice that they may bring a lawsuit.  Maui Windsurfing Opp'n 30-32.  To accept Maui Windsurfing's argument would lead to the untenable result that a defendant with full knowledge of a likely lawsuit can destroy evidence with impunity so long as the plaintiff has not yet notified the defendant that he will bring a lawsuit.  Contrary to Maui Windsurfing's arguments, spoliation sanctions do not require that

---

[8]  Maui Windsurfing further argues that spoliation sanctions are not appropriate because Empire destroyed the vehicle in the ordinary course of its business.  *See* Maui Windsurfing Opp'n 32-35.  The court rejects this argument -- once Empire and Maui Windsurfing were on notice of probable litigation, their duty to preserve the vehicle attached regardless of what actions they would have taken in normal course of business.  The court also recognizes that this action is not at all similar to those actions in which a business is accused of destroying documents pursuant to a document retention policy.  Rather, at issue in this action is a vehicle which Maui Windsurfing and Empire knew was involved in a fatal accident and which might have a vehicle defect.

the spoliating party be told of potential litigation -- notice is sufficient.[9] *See In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d at 1066 ("District courts may impose sanctions against a party that merely had notice that the destroyed evidence was potentially relevant to litigation."); *see also Glover*, 6 F.3d at 1329 (stating that "simple notice" that destroyed evidence has "potential relevance to . . . litigation" is sufficient to warrant spoliation sanction).

Finally, Maui Windsurfing argues that it had no notice of potential litigation because there were explanations for the accident including that Mark Durham had run a stop sign and was potentially intoxicated and/or impaired.  Maui Windsurfing Opp'n 34-36.  That carelessness on Mark Durham's part may have caused the accident does not rule out the possibility that a vehicle defect contributed to the injuries suffered by Jessica, Marisa, and Mark Durham.  As explained above, the totality of the evidence establishes that Maui Windsurfing had notice of probable litigation by Plaintiffs; that Mark Durham may have caused the accident does not change its notice.

---

[9] The facts of this action highlight why the rule is one of notice, and not actual notification of suit.  After the accident, Sheri Durham was in the midst of mourning the loss of her husband, tending to Jessica's medical needs, and trying to start working again to support the family.  It would be an absurd result if Maui Windsurfing, knowing that litigation in the future was likely, could nonetheless destroy relevant evidence while Plaintiffs are dealing with the immediate consequences of the accident.

### 2.    *Prejudice*

Plaintiffs are asserting design defect claims, and have acknowledged that the vehicle is not necessary to determine whether a design defect contributed to the injuries sustained.  In their Motion, however, Plaintiffs argue that they are prejudiced not merely because the vehicle is unavailable, but because Ford's experts have criticized Plaintiffs' expert's opinion on the basis that without the vehicle, any opinion regarding the precise damage of the vehicle is mere conjecture.  *See* Pls.' Mot. 7-8; Pls.' Ex. F, Michelle Vogler Report at 6 (opining that Plaintiffs' expert's opinion regarding damage is "simply conjecture" without a photogrammetric analysis of the vehicle); Pls.' Ex. G, Debora Marth Report at 5 (stating that photographs are insufficient because "[w]ithout firsthand inspection of the [vehicle], it is impossible to discern the amount of damage caused by the collision versus extrication efforts and post-crash handling of the vehicle"); *see also North v. Ford Motor Co.*, 505 F. Supp. 2d 1113, 1117 (D. Utah 2007) (finding that destruction of the vehicle in design defect case caused prejudice, which was lessened by the fact that there was other evidence such as photographs available). In other words, the loss of the vehicle provides Ford a means of attacking Plaintiffs' expert's opinion that would not exist had Maui Windsurfing and/or Empire preserved the vehicle.

After Plaintiffs filed their Motion, however, Plaintiffs and Ford reached a tentative settlement -- Ford will not be at trial to attack Plaintiffs' expert. Further, Maui Windsurfing asserted during the September 7, 2010 hearing that it will not attack or otherwise attempt to undermine Plaintiffs' expert on the basis that he did not inspect the vehicle.  In short, Maui Windsurfing claims that it will not suggest to the jury, directly or through cross examination, that the destruction of the vehicle undermines Plaintiffs' case in any manner.  And at this time, Plaintiffs have not articulated any prejudice beyond the mere general concern that the jury may blame Plaintiffs for the vehicle's ultimate destruction.  Given these developments, it is unclear precisely what prejudice Plaintiffs will suffer at trial. *See also Collazo-Santiago v. Toyota Motor Corp.*, 149 F.3d 23, 29 (1st Cir. 1998) ("In design defect cases, however, a party's examination of the individual product at issue may be of lesser importance as the design defect alleged can be seen in other samples of the product.  Nevertheless, examination of the individual product in question may still be of significant import in certain design defect cases where, for example, the question whether the alleged defect or some other factor caused a particular injury is at issue."); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79-80 (3d Cir. 1994) (explaining that defendants usually are not prejudiced by destruction or loss of evidence in design defect cases because they can test other

20

products of same design); *Green v. Ford Motor Co.*, 2008 WL 5070489, at *4

(S.D. Ind. Nov. 25, 2008) (denying spoliation sanctions because party was not

prejudiced where "[a]n examination of the specific Explorer in question is

essentially irrelevant to the issue of whether it, and the thousands of others like it,

were designed improperly").

A final determination of prejudice, however, should be made after the

evidence is presented to the jury.  The court therefore DENIES Plaintiffs' Motion

to the extent it seeks an adverse inference jury instruction (or simply an instruction

informing the jury that Plaintiffs were not responsible for the vehicle's destruction,

and that the destruction should not be held against Plaintiffs), without prejudice to

Plaintiffs raising this issue at trial.

The court is able to determine at this time, however, that Plaintiffs are

not entitled to an entry of judgment of liability against Maui Windsurfing.

Regardless of what the court ultimately determines on prejudice to Plaintiffs, the

drastic sanction of judgment on liability is not warranted under these facts.  While

Maui Windsurfing knew that the vehicle was relevant to foreseeable litigation and

at the very least could have informed Plaintiffs that the vehicle would be destroyed,

Al West tried to convince Empire to maintain the vehicle, suggesting that the

destruction was neither willful nor in bad faith.  Further, the risk of prejudice to

Plaintiffs is not so great because as even they admit, the availability of the vehicle is not necessary to determine whether it had a design defect. Finally, also weighing against this sanction is that public policy favors disposition of cases on the merits, and less drastic sanctions are available that would serve to mitigate the prejudice to Plaintiffs as well as deter others from similar conduct. The court therefore DENIES Plaintiffs' request for entry of judgment on the issue of liability as to Maui Windsurfing.

## IV.  CONCLUSION

Based on the above, the court (1) DENIES Plaintiffs' Spoliation Motion seeking entry of judgment on the issue of liability as to Maui Windsurfing, and (2) DENIES Plaintiffs' Spoliation Motion seeking an adverse inference jury instruction, without prejudice to Plaintiffs raising this issue at trial.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 10, 2010.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Durham et al. v. County of Maui et al.*, Civ. No. 08-00342 JMS/LEK, Order: (1) Denying Plaintiffs' Motion for Spoliation Sanctions, Doc. No. 859, Seeking Entry of Judgment as to Liability Against Maui Windsurfing Vans, Inc., and (2) Denying Without Prejudice Plaintiffs' Motion for Spoliation Sanctions, Doc. No. 859, Seeking an Adverse Inference Jury Instruction