IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHERI GAIL DURHAM, INDIVIDUALLY AND AS NEXT OF FRIEND OF MARISA UMA LAMA DURHAM, MINOR ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF MAUI, ET AL. <br><br> Defendants. | CIV. NO. 08-00342 JMS/RLP <br><br> ORDER (1) GRANTING DEFENDANT FORD MOTOR COMPANY'S MOTION FOR APPROVAL OF GOOD FAITH SETTLEMENT, DOC. NO. 1008; AND (2) GRANTING PLAINTIFFS' SECOND SUBSTANTIVE JOINDER TO DEFENDANT FORD MOTOR COMPANY'S MOTION FOR APPROVAL OF GOOD FAITH SETTLEMENT, DOC. NO. 1055 |

**ORDER (1) GRANTING DEFENDANT FORD MOTOR COMPANY'S MOTION FOR APPROVAL OF GOOD FAITH SETTLEMENT, DOC. NO. 1008; AND (2) GRANTING PLAINTIFFS' SECOND SUBSTANTIVE JOINDER TO DEFENDANT FORD MOTOR COMPANY'S MOTION FOR APPROVAL OF GOOD FAITH SETTLEMENT, DOC. NO. 1055**

**I. INTRODUCTION**

This action arises from a July 26, 2006 two-car accident in which Mark Durham and his two daughters, Jessica and Marisa, were injured after Mark Durham allegedly failed to heed a stop sign at the intersection of Pulehu Road and Hansen Road in the County of Maui. Mark Durham passed away as a result of his injuries, and Plaintiffs Sheri Gail Durham ("Sheri Durham"), individually and as next friend of Jessica and Marisa and as the Administrator of the Estate of Mark Allen Durham (the "Estate"), subsequently filed this lawsuit alleging claims

against: (1) the County of Maui (the "County") for roadway defects, (2) Ford Motor Company ("Ford") and Maui Windsurfing Vans, Inc. ("Maui Windsurfing") for product liability, (3) Patty Conte ("Conte"), the driver of the other vehicle, for negligence, and (4) Hawaii Pacific Health, Kapiolani Medical Center for Women and Children, Kapiolani Medical Specialists, Shilpa J. Patel, M.D., (collectively "Kapiolani Defendants"), James Y. Sim, M.D., James Y. Sim, M.D., LLC, (collectively "Sim"), and Byron H. Izuka, M.D., and Byron H. Izuka, M.D. LLC (collectively "Izuka") for medical malpractice relating to Jessica's medical treatment.[1]

Currently before the court is (1) Ford's Motion for Approval of Good Faith Settlement ("Ford's Motion") of a settlement agreement between Plaintiffs and Ford; and (2) Plaintiffs' Second Substantive Joinder in Ford's Motion, in which Plaintiffs additionally seek a good faith settlement determination of settlements between Plaintiffs and the County and Plaintiffs and Maui Windsurfing. If the court finds that these settlements were entered into in good faith, all claims, cross-claims, and counterclaims against Ford, the County, and Maui Windsurfing will be dismissed with prejudice pursuant to Hawaii Revised

---

[1] On December 25, 2008, Jessica passed away and the court subsequently substituted Plaintiff Denise Ann Jenkins as the Administrator of Jessica's estate in place of Sheri Durham, as next friend of Jessica. Denise Ann Jenkins is now also the Administrator of the Estate.

2

Statutes ("HRS") § 663-15.5. Kapiolani Defendants, Sim, and Izuka (collectively "non-settling Defendants") object to Ford's Motion and Plaintiffs' Second Substantive Joinder, arguing that the allocation of the settlement amounts amongst Plaintiffs is collusive and aimed at harming non-settling Defendants' interests. Based on the following, the court finds that the non-settling Defendants have not carried their burden of establishing the lack of good faith, and therefore GRANTS Ford's Motion for Good Faith Settlement and GRANTS Plaintiffs' Second Substantive Joinder.

## II. BACKGROUND

A.  Factual Background

   *1.  The Parties' Claims*

The court has previously explained the facts of this action in multiple previous orders and therefore provides only the following brief overview of the issues in this action:

On July 26, 2006, Mark Durham was driving a 2004 Ford Focus station wagon (the "subject vehicle") rented from Maui Windsurfing on Pulehu Road with his two minor daughters, Jessica and Marisa. From the police investigation, it appears that Mark Durham failed to heed a stop sign at the intersection with Hansen Road, resulting in the SUV driven by Patty Conte on

3

Hansen Road hitting the subject vehicle on its left side. Mark Durham passed away as a result of the injuries in the accident, and a post-mortem blood test confirmed the presence of the active ingredient in marijuana, indicating the recent use of marijuana. *See Durham v. County of Maui*, 742 F. Supp. 2d 1121 (D. Haw. 2010). Marisa suffered a broken nose, and Jessica sustained substantial injuries including a ruptured spleen, fractured femur, a radial and ulna fracture, respiratory lacerations, and pulmonary contusions. Jessica passed away over two years later from a ruptured aortic dissection.

Plaintiffs assert a number of claims against Ford, Maui Windsurfing, and the County based on the accident itself.[2] Specifically, Plaintiffs assert claims against Ford and Maui Windsurfing for negligence, strict liability, and survival and wrongful death, and an additional claim against Ford for gross negligence on the basis that the subject vehicle was defective because it lacked side airbags and its side structure and seat belts in concert with the seats did not reasonably minimize head and chest injuries in side impact collisions involving SUVs. Plaintiffs also assert claims against the County on the basis that the road design and condition contributed to the accident. There are numerous factual disputes between the parties, resulting in several evidentiary motions and the denial of Ford's, Maui

---

[2] Plaintiff also asserted claims against Conte, which were subsequently settled. *See* Doc. Nos. 407, 497, 550, 1081.

4

Windsurfing's, and the County's Motions for Summary Judgment. *See* Doc. No. 985 (Order Denying County's Motion for Summary Judgment); *Durham*, 742 F. Supp. 2d 1121 (denying Plaintiffs' motion to exclude evidence of marijuana); *Durham v. County of Maui*, 2010 WL 3528991 (D. Haw. Sept. 10, 2010) (denying Plaintiffs' motion for spoliation sanctions against Maui Windsurfing); *Durham v. County of Maui*, 696 F. Supp. 2d 1150 (D. Haw. 2010) (denying Ford's motion for summary judgment arguing preemption); *Durham v. County of Maui*, 692 F. Supp. 2d 1256 (D. Haw. 2010) (denying Ford's motion for summary judgment on punitive damages); *Durham v. County of Maui*, 2010 WL 520699 (D. Haw. Feb. 10, 2010) (denying Ford's motion to dismiss arguing spoliation); *Durham v. County of Maui*, 2010 WL 234875 (D. Haw. Jan. 21, 2010) (denying Maui Windsurfing's motion for summary judgment).

Sheri Durham and Jessica's Estate also assert claims against Kapiolani Defendants, Sim, and Izuka relating to Jessica's post-accident medical care. Like Plaintiffs' claims against the County, Maui Windsurfing, and Ford based on the accident itself, the claims against these medical providers raise numerous factual issues and the court has granted in part and denied in part Motions for Summary Judgment by Kapiolani Defendants and Sim. *See Durham v. County of Maui*, 2010 WL 2943358 (D. Haw. July 28, 2010).

In addition to Plaintiffs' claims, Defendants have asserted cross-claims against one another.

### 2. *The Settlement Agreements at Issue*

Plaintiffs and Ford have entered a tentative settlement providing for Ford to pay a lump sum[3] to be allocated between Plaintiffs approximately as follows: (1) Jessica's Estate 42.86 percent; (2) Marisa 28.57 percent; (3) Sheri Durham 28.57 percent; and (4) Mark Durham's Estate zero percent.

Plaintiffs and the County have also entered a tentative settlement providing for the County to pay a lump sum to be allocated between Plaintiffs approximately as follows: (1) Jessica's Estate 42.67 percent; (2) Marisa 28.67 percent; (3) Sheri Durham 28.67 percent; and (4) Mark Durham's Estate zero percent.

Finally, Plaintiffs and Maui Windsurfing have entered a tentative settlement providing for Maui Windsurfing to pay a lump sum to be allocated between Plaintiffs approximately as follows: (1) Jessica's Estate 41.18 percent; (2) Marisa 29.41 percent; (3) Sheri Durham 29.41 percent; and (4) Mark Durham's Estate zero percent.

Plaintiffs, in their sole discretion, determined the allocations of the

---

[3] The actual amount of each settlement is confidential.

settlement amounts between Jessica's Estate, Marisa, Sheri Durham, and the Estate of Mark Durham. *See* Doc. No. 1008-1 at 15; Doc. No. 1055 at 12. Further, both the County and the Maui Windsurfing settlement agreements provide that they are not "intended to benefit the remaining medical malpractice Defendants in the lawsuit." Doc. No. 1055-2 at 6 ¶ 4; Doc. No. 1055-3 at 1 ¶ 1.2. Finally, all settlements further provide that they are not effective unless and until the court finds that they were entered into in good faith pursuant to HRS § 663-15.5. *See, e.g.*, Doc. No. 1054-1 ¶ 4(d); Doc. No. 1055-2 ¶¶ 4, 5, 8.1; Doc. No. 1055-3 ¶¶ 3.4, 4.2, 7.1.

**B.    Procedural Background**

On December 3, 2010, Ford filed its Motion for Good Faith Settlement, which Plaintiffs joined on December 16, 2010. On December 20, 2010, Kapiolani Defendants, Sim, Izuka, and Maui Windsurfing filed Oppositions, which the County subsequently joined. On December 27, 2010, Ford and Plaintiffs filed Replies. On December 29, 2010, Counterclaim Defendant Jenkins filed a statement of no position.

On January 14, 2011, Plaintiffs and the County and Maui Windsurfing put their settlements on the record with the court.[4] On January 18, 2011, Plaintiffs

---

[4] As a result of these settlements, Maui Windsurfing withdrew its Opposition to Ford's
(continued...)

filed their Second Substantive Joinder to Ford's Motion, which seeks a determination of good faith settlement as to Plaintiff's settlements with the County and Maui Windsurfing. The County and Maui Windsurfing subsequently joined in Plaintiff's Second Substantive Joinder, and on January 21, 2011, Kapiolani, Sim, and Izuka filed Oppositions.

On January 25, 2011, the court held a hearing on Ford's Motion and Plaintiffs' Second Substantive Joinder, and raised the issue of whether HRS § 663-15.5(b) required that Plaintiffs to provide notification of these settlements to medical providers located in Texas whom Plaintiffs have served with Notice of Claim letters. The court therefore reset the hearing on these Motions for good faith settlement so that Plaintiffs could first provide notice of the settlements to these (and any other) alleged joint tortfeasors and then allow the statutory period for objections in HRS § 663-15.5(b) to pass. On January 31, 2011, Plaintiffs provided notice of these settlements to the medical providers in Texas. No further objections were filed.[5] A hearing was held on March 15, 2011.

///

---

[4](...continued)
Motion for Good Faith Settlement.

[5] On March 4, 2011, Sim's counsel filed a Supplemental Declaration in further Opposition to Plaintiffs' Second Substantive Joinder, but the issue it raised (that another action in Texas may exist) has been resolved.

# III. DISCUSSION

As the court has already explained in previous orders, *see Durham v. County of Maui*, 2010 WL 3431128 (D. Haw. Aug. 31, 2010); *Durham v. County of Maui*, 2009 WL 2143636 (D. Haw. July 16, 2009), pursuant to HRS § 663-15.5(a), a finding of good faith settlement (1) discharges the settling party of liability for contribution to joint tortfeasors, and (2) reduces a plaintiff's claims against joint tortfeasors by the "amount stipulated to in the release, dismissal, or covenant, or in the amount of the consideration paid for it, whichever is greater[.]" A determination by the court that a settlement was made in good faith bars other joint tortfeasors from any further claims against the settling tortfeasor for contribution or indemnity. *See* HRS § 663-15.5(d). If a non-settling alleged joint tortfeasor objects to a request for good faith settlement, it has the burden of proof of lack of good faith. HRS § 663-15.5(b).

In *Troyer v. Adams*, 102 Haw. 399, 77 P.3d 83 (2003), the Hawaii Supreme Court adopted a "totality of the circumstances" approach for determining whether a settlement was made in good faith under HRS § 663-15.5, and listed the following nonexclusive factors for a court to consider:

> (1) the type of case and difficulty of proof at trial, e.g., rear-end motor vehicle collision, medical malpractice, product liability, etc.; (2) the realistic approximation of total damages that the plaintiff seeks; (3) the strength of

9

> the plaintiff's claim and the realistic likelihood of his or her success at trial; (4) the predicted expense of litigation; (5) the relative degree of fault of the settling tortfeasors; (6) the amount of consideration paid to settle the claims; (7) the insurance policy limits and solvency of the joint tortfeasors; (8) the relationship among the parties and whether it is conducive to collusion or wrongful conduct; and (9) any other evidence that the settlement is aimed at injuring the interests of a non-settling tortfeasor or motivated by other wrongful purpose.

102 Haw. at 427, 77 P.3d at 111.

As the court's recitation of the factual issues between the parties highlights, this court has addressed multiple motions between the parties and is well-familiar with the issues that will likely be presented at trial. Drawing from this familiarity of the strengths and weaknesses of the parties' positions, the court finds that the first six *Troyer* factors weigh in favor of a finding of good faith settlement.

Specifically, as to the type of case and difficulty of proof at trial (factor one) as well as the predicted expense of litigation (factor four), this is a complex action involving numerous parties and different theories of liability. Proof at trial will likely be difficult -- there are numerous factual and legal disputes going into trial, and the parties' positions will turn not only on fact witnesses, but also the various expert witnesses each party has retained. This litigation has no

doubt been very expensive for all parties, and the costs will only continue to accrue through (and after) trial.

As to the realistic approximation of total damages that the plaintiff seeks (factor two), none of the parties provides the court even a ballpark range of the total damages Plaintiffs seek, or the damages that each Plaintiff might receive at trial.[6] It is fair to say, however, that each Plaintiff is seeking substantial damages given the extensive injuries and loss of life involved in this action. Indeed, although Marisa suffered only a broken nose, she witnessed Mark Durham's mortal injuries in the vehicle and both she and Sheri Durham assert claims for the loss of Mark Durham. If Plaintiffs prevail at trial, it is not unreasonable to believe that each Plaintiff's recovery would be substantial.

As to the strength of Plaintiffs' claims and the realistic likelihood of success at trial (factor three), Plaintiffs have some likelihood of success -- Plaintiffs' claims have survived several motions for summary judgment (recited above), and their success at trial may well come down in large part to which experts the jury credits.

Finally, as to the relative degree of fault of the settling tortfeasors

---

[6] Although Kapiolani Defendants mention that Jessica's medical expenses were $290,000 and Sheri Durham's lost earning were $186,000, *see* Doc. No. 1021 at 5, none of the non-settling Defendants, who have the burden of establishing lack of good faith, discusses Marisa and Sheri's possible recovery in light of the full scope of the claims they assert.

(factor five) and the amount of consideration paid to settle the claims (factor six), a jury may find Mark Durham significantly at fault -- evidence suggests that he ran the stop sign, tested positive for the active ingredient in marijuana, and failed to ensure that Jessica was wearing her seatbelt.  Despite this questionable degree of fault, each settling Defendant has agreed to significant payments to end this litigation.  Indeed, no party has raised any supported basis for the court to find the settlement amounts too low.

Despite the first six factors weighing in favor of a finding of good faith settlement, whether the settlements are conducive to collusion or wrongful conduct (factor eight) weighs against a finding of good faith settlement.[7]  All of the settlement agreements gave Plaintiffs sole discretion to determine how to allocate the lump sum payments, and this discretion certainly opens the door to Plaintiffs colluding amongst themselves to determine strategically the best way to divide the settlements to maximize recovery against the non-settling tortfeasors.

This possibility of collusion leads to the last factor (which at the March 15, 2011 hearing the parties agreed is the focus of their dispute) -- *i.e.*, whether there is evidence that the settlement is aimed at injuring the interests of the non-settling Defendants or motivated by other wrongful purpose.  In other words,

---

[7] Because the parties do not address the insurance policy limits and solvency of the joint tortfeasors (factor seven), the court finds this factor neutral.

the relevant question for the settlements at issue is whether there is evidence that this possibility of collusion actually results in harm to the non-settling Defendants or is motivated by other wrongful purposes? In arguing that this question should be answered "yes," non-settling Defendants assert that the apportionment on its face fails this inquiry because it should (1) apportion more to Jessica, who suffered extensive injuries and eventually passed away, or (2) apportion some share to Mark Durham, who passed away as a result of his injuries.

Certainly, apportioning more of the settlements to Jessica, depending on the jury's verdict, could alter any offset applied against the non-settling Defendants, but the focus of the good faith inquiry is not to maximize the benefit of these settlements to non-settling Defendants. Further, although the court might on its own might have allocated the amounts differently, how the court would apportion the settlements is not the appropriate inquiry either. Indeed, the focus of HRS § 663-15.5 is not to ensure equitable apportionment of settlements, but rather to encourage settlements. *Troyer*, 102 Haw. at 426, 77 P.3d at 110. Accordingly, the inquiry is one of reasonableness -- if the apportionment is unreasonable, then the apportionment is more likely aimed at injuring the interests of a non-settling Defendants and/or maximizing settlement recovery.

In viewing the apportionment in light of the court's familiarity with

13

the facts and issues of this case, the court finds that it is not unreasonable. Under each of the settlements, Jessica still receives the largest amount amongst Plaintiffs. Further, as explained above, Marisa and Sheri Durham are settling substantial claims -- Marisa was in the vehicle and witnessed the mortal injuries Mark Durham sustained, and both Marisa and Sheri Durham have claims for loss of Mark Durham. Although non-settling Defendants argue that these settlements may end up giving more to Marisa and Sheri Durham than they would receive at trial, their argument is at best conjecture. Finally, as to Mark Durham, the decision to allocate nothing to his estate is not unreasonable -- a jury may find Mark Durham significantly at fault for allegedly running the stop sign, being under the influence of marijuana, and failing to have Jessica wear her seatbelt. In sum, there are valid reasons for allocating more of the settlements to Jessica, while at the same time providing significant recovery for Marisa and Sheri Durham. Given that the allocations are supportable, the court will not substitute its own notions about what the allocation *should* be, especially given that there is a range of possible apportionments that may be considered reasonable. Plaintiffs' allocations are not unreasonable under the totality of the circumstances. Accordingly, the last factor does not weigh against a finding of good faith settlement.

Finally, Sim argues that the Maui Windsurfing and County

settlements are not in good faith because they both provide clauses stating that Plaintiffs' Release of claims "in no manner is intended to benefit the remaining medical malpractice Defendants in the lawsuit." Doc. No. 1055-2 at 6 ¶ 4; Doc. No. 1055-3 at 5 ¶ 3.5. Sim argues that these provisions violate HRS § 663-15.5(a)(2), which provides that the release shall "[r]educe the claims against the other joint tortfeasor or co-obligor not released in the amount stipulated by the release, . . . or in the amount of the consideration paid for it, whichever is greater." Doc. No. 1066, at 7. The court rejects this argument -- regardless of whatever the parties to the settlement agreement *intended*, if the County and Maui Windsurfing are joint tortfeasors with the non-settling Defendants, then these settlements will reduce the claims against the non-settling Defendants as required by HRS § 663-15.5(a)(2).[8]

        In sum, of all the relevant *Troyer* factors, only the eighth *Troyer* factor weighs against a finding of good faith. Weighing all of the *Troyer* factors together, the court finds that non-settling Defendants have not carried their burden of establishing that Plaintiffs' settlements with Ford, the County, and Maui Windsurfing are not in good faith.

---

[8] Although Plaintiffs now assert -- despite their previous assertions to the contrary -- that the non-settling Defendants are not joint tortfeasors with Ford, the County, or Maui Windsurfing, the court need not determine this issue to find that the settlements were in good faith.

15

## IV.  **CONCLUSION**

Based on the above, the court GRANTS Ford's Motion for Approval of Good Faith Settlement, and GRANTS Plaintiffs' Second Substantive Joinder to Ford's Motion for Approval of Good Faith Settlement.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 23, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Durham et al. v. County of Maui et al.*, Civ. No. 08-00342 JMS/RLP, Order (1) Granting Defendant Ford Motor Company's Motion for Approval of Good Faith Settlement, Doc. No. 1008; and (2) Granting Plaintiffs' Second Substantive Joinder to Defendant Ford Motor Company's Motion for Approval of Good Faith Settlement, Doc. No. 1055