IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHERI GAIL DURHAM, Individually and as Next Friend of MARISA UMA LAMA DURHAM, Minor, ET AL.,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF MAUI, ET AL.,<br><br>Defendants. | CIVIL NO. 08-00342 JMS/RLP<br><br>ORDER DENYING (1) PLAINTIFFS' MOTION IN LIMINE NO. 1 [DOC. NO. 1103], (2) COUNTERCLAIM DEFENDANT DENISE JENKINS' JOINDER TO PLAINTIFFS' MOTION IN LIMINE NO. 1 [DOC. NO. 1157], AND (3) COUNTERCLAIM DEFENDANT DENISE JENKINS' MOTION IN LIMINE TO BAR EVIDENCE OF NEGLIGENCE OF MARK DURHAM [DOC. NO. 1108] |

**ORDER DENYING (1) PLAINTIFFS' MOTION IN LIMINE NO. 1 [DOC. NO. 1103], (2) COUNTERCLAIM DEFENDANT DENISE JENKINS' JOINDER TO PLAINTIFFS' MOTION IN LIMINE NO. 1 [DOC. NO. 1157], AND (3) COUNTERCLAIM DEFENDANT DENISE JENKINS' MOTION IN LIMINE TO BAR EVIDENCE OF NEGLIGENCE OF MARK DURHAM [DOC. NO. 1108]**

### I. INTRODUCTION

This Order rules on two substantially-similar Motions in Limine and a Substantive Joinder in one of those Motions.

First, Plaintiffs (1) Sheri Gail Durham, Individually and as Next Friend of Marisa Uma Lama Durham, and (2) Denise Ann Jenkins, as Administrator of the Estate of Jessica Haley Durham, and as the Administrator of

the Estate of Mark Allen Durham (collectively "Plaintiffs"), have filed a Motion in Limine to Preclude Evidence, Testimony, and Argument as to Mark Durham's Liability for Causing and/or Contributing to Jessica Durham's Injuries ("Plaintiffs' MIL No. 1").  Doc. No. 1103.

Second, Counterclaim Defendant Denise Ann Jenkins, as the Administrator of the Estate of Mark Allen Durham, Deceased, has filed a Substantive Joinder to Plaintiffs' MIL No. 1.  Doc. No. 1157.

Third, Counterclaim Defendant Denise Ann Jenkins, as Administrator of the Estate of Mark Allen Durham, Deceased, has filed a Motion in Limine to Bar Evidence of Negligence of Mark Durham, Deceased ("Estate of Mark Durham's MIL No. 11").  Doc. No. 1108.

This action has proceeded for nearly three years on allegations and consistent representations (relied upon by the court and the parties) that all Defendants are, or could be, jointly and severally liable for injuries to Plaintiffs.  In a related action in Texas, Plaintiffs asserted claims against the Estate of Mark Durham.  And some Defendants have asserted counter-claims in the present action against the Estate of Mark Durham for contribution.  Procedurally, it would be improper to now determine as a matter of law by motions in limine (where the dispositive motions deadline has passed, and where the ruling would require

summary judgment standards) that Mark Durham cannot be a joint tortfeasor who could have caused at least a portion of indivisible injuries to Jessica Durham. Further, on the current evidentiary record, there are questions of fact such that Mark Durham could have at least some liability for causing an apportionable part of such injuries. Accordingly, the Motions and Substantive Joinder are DENIED.[1]

## II. BACKGROUND

### A. The Parties' Claims

The court has previously explained the facts of this action in multiple previous orders and therefore provides only the following brief overview of the relevant issues in this action:

On July 26, 2006, Mark Durham was driving a 2004 Ford Focus station wagon (the "subject vehicle") rented from Maui Windsurfing Vans, Inc. ("Maui Windsurfing") on Pulehu Road in the County of Maui with his two minor daughters, Jessica and Marisa. There is evidence that Mark Durham failed to heed a stop sign at the intersection with Hansen Road, resulting in the SUV driven by Patty Conte ("Conte") on Hansen Road hitting the subject vehicle on its left side. Mark Durham passed away as a result of the injuries in the accident, and a post-

---

[1] This Order addresses only the question of whether evidence regarding Mark Durham's contribution to the accident and to Plaintiffs' injuries should be excluded. Issues relating to admissibility of evidence or expert testimony regarding Mark Durham's blood test and related impairment are addressed in a separate order regarding other related Motions in Limine.

mortem blood test confirmed the presence of the active ingredient in marijuana, indicating the recent use of marijuana. *See Durham v. County of Maui*, 742 F. Supp. 2d 1121 (D. Haw. 2010).[2] Marisa suffered a broken nose, and Jessica sustained substantial injuries including a ruptured spleen, fractured femur, a radial and ulna fracture, respiratory lacerations, and pulmonary contusions. Jessica passed away over two years later from a ruptured aortic dissection.

Plaintiffs asserted a number of claims in this action against Defendants the County of Maui (the "County"), Ford Motor Company ("Ford"), Maui Windsurfing, and Conte (collectively the "Collision Defendants") based primarily on the accident itself. Specifically, Plaintiffs asserted claims against Ford and Maui Windsurfing for negligence, strict liability, and survival and wrongful death, and an additional claim against Ford for gross negligence on the basis that the subject vehicle had safety-related defects. Plaintiffs asserted claims against the County on the basis that the road design and condition contributed to the accident. After resolving several evidentiary disputes, the court denied Ford's, Maui Windsurfing's, and the County's Motions for Summary Judgment. *See* Doc. No. 985 (Order Denying County's Motion for Summary Judgment); *see also id.*

---

[2] The court easily rejects Plaintiffs' argument in the Motions in Limine that there is insufficient evidence that Mark Durham had no role in causing the *accident* (as distinguished from causing Jessica's injuries) -- whether or not that argument more properly should have been made at a summary judgment stage.

(denying Plaintiffs' motion to exclude evidence of marijuana); *Durham v. County of Maui*, 2010 WL 3528991 (D. Haw. Sept. 10, 2010) (denying Plaintiffs' motion for spoliation sanctions against Maui Windsurfing); *Durham v. County of Maui*, 696 F. Supp. 2d 1150 (D. Haw. 2010) (denying Ford's motion for summary judgment arguing preemption); *Durham v. County of Maui*, 692 F. Supp. 2d 1256 (D. Haw. 2010) (denying Ford's motion for summary judgment on punitive damages); *Durham v. County of Maui*, 2010 WL 520699 (D. Haw. Feb. 10, 2010) (denying Ford's motion to dismiss arguing spoliation); *Durham v. County of Maui*, 2010 WL 234875 (D. Haw. Jan. 21, 2010) (denying Maui Windsurfing's motion for summary judgment).

The claims against the Collision Defendants subsequently settled, and the settlements were confirmed as having been entered into in good faith under Hawaii Revised Statutes ("HRS") § 663-15.5. *See* Doc. Nos. 497 (Finding and Recommendation to Grant Patty Conte's Motion for Approval of Good Faith Settlement) & 550 (Order Adopting Doc. No. 497); *see also Durham v. County of Maui*, 2011 WL 1135082 (D. Haw. Mar. 23, 2011) (Order approving good faith settlements of Ford, Maui Windsurfing, and the County).

Sheri Durham and Jessica's Estate also alleged claims in this action for negligence and medical malpractice against Kapiolani Medical Center for

5

Women and Children ("KMCWC"), Hawaii Pacific Health, Shilpa J. Patel, M.D., and Kapiolani Medical Specialists (collectively "Kapiolani Defendants") relating to Jessica's post-accident medical care. Similarly, Sheri Durham and Jessica's Estate alleged claims regarding post-accident medical care against James Y. Sim, M.D., and James Y. Sim, M.D., LLC (collectively "Sim"), and against Byron H. Izuka, M.D., and Byron H. Izuka, M.D., LLC (collectively "Izuka"). (The court refers to Kapiolani Defendants, Sim, and Izuka collectively as the "Medical Defendants."). In defense, KMCWC and Izuka filed counterclaims[3] seeking contribution against the Estate of Mark Durham. *See* Doc. Nos. 535-2 & 590-2. Those counterclaims remain pending.

As with Plaintiffs' claims against the Collision Defendants, the claims against the Medical Defendants raise numerous factual issues and the court has granted in part and denied in part Motions for Summary Judgment by Kapiolani Defendants and Sim. *See Durham v. County of Maui*, 2010 WL 2943358 (D. Haw. July 28, 2010).

**B.    Plaintiffs' Prior Claims in Texas State Court**

Plaintiffs previously filed a separate action in a Texas state court

---

[3] They were denominated "counterclaims" because the Estate of Mark Durham was a co-Plaintiff in this action. The Estate of Mark Durham, however, asserted claims only against the Collision Defendants and not against the Medical Defendants.

against the Estate of Mark Durham. *See* Doc. No. 227-6. That Texas action alleged that Jessica and Marisa Durham were passengers in a vehicle driven by Mark Durham, and received injuries as a result of the accident. *Id.* at 2 ¶ 4.1, and at 7 ¶ A. The action was settled and resolved for "the liability claims that pass through and relate to the Estate of Mark Durham." *Id.* ¶ 4.2. Jessica's claims were settled for $60,000 (representing the $40,000 limit of Mark Durham's automobile insurance policy, and the $20,000 policy limit from applicable insurance on the subject vehicle). *Durham v. County of Maui*, 2010 WL 3431128, at *1 (D. Haw. Aug. 31, 2010). Similarly, Marisa's claims against the Estate of Mark Durham were settled for $40,000, which was also the applicable limit under Mark Durham's automobile insurance policy. *Id.*

The court has refused on multiple occasions to certify the settlement of the Texas action to have been in good faith for purpose of HRS § 663-15.5. *See id.* (Order Adopting Findings and Recommendation to Deny Counterclaim Defendant's Petition for Finding of Good Faith Settlements); *see also Durham v. County of Maui*, 2009 WL 2143636 (D. Haw. July 16, 2009) (Order Adopting Findings and Recommendation to Deny the Estate of Mark Durham's Petition for Finding of Good Faith Settlements).

C.   **Plaintiffs' Theory of Joint and Several Liability Against All Defendants**

In all three versions of their Complaint in the present action, Plaintiffs asserted their claims against all Defendants (*i.e.*, the Collision Defendants and the Medical Defendants) jointly and severally.  *See* Doc. No. 1, Compl. ¶ 30 ("The Defendants herein have all caused, contributed to causing or were substantial factors in causing, jointly and severally, the [injuries] which are described in the Complaint."); Doc. No. 137, First Am. Compl. ¶ 31 (same); Doc. No. 508, Second Am. Compl. ¶ 40 ("The acts and omissions of the various Defendants described in this pleading, alone or in combination with each other, have caused, contributed to causing or were substantial factors in causing, jointly or severally, the [injuries] described throughout this pleading.").

Consistent with this theory of joint and several liability against all Defendants, Plaintiff Sheri Durham opposed an earlier motion by the Kapiolani Defendants to sever claims against the Medical Defendants from claims against the Collision Defendants.  *See* Doc. No. 56, Kapiolani Defendants' Motion for Entry of an Order for Severance of Claims ("Motion to Sever"); Doc. No. 126, Order of Jan. 12, 2009 Denying Motion to Sever.[4]

---

[4] At that time, Jessica had not passed away, and Sheri Durham (individually and on behalf of Jessica and Marisa, and as Administrator of the Estate of Mark Durham) was the sole Plaintiff.  Jessica's Estate was subsequently added as a Plaintiff in a later version of the

(continued...)

8

As to that Motion to Sever, Sheri Durham argued to the court that all claims had common issues of fact, "including the cause and extent of the injuries sustained by Jessica Durham as a result of a common event or transaction." Doc. No. 101 at 3. Her position then was "Jessica's injuries and damages . . . arise out of the accident and all foreseeable, attendant and subsequent related events, including but not limited to the actions of [the Kapiolani Defendants] and Dr. Izuka." *Id.* She contended that "[a] single jury in one action is needed to determine the causes and extent of Jessica's injuries, as well as the respective fault of *each* defendant." *Id.* at 7.[5]

Based on Sheri Durham's theory, the court (in a ruling by then-Magistrate Judge Leslie Kobayashi) declined to sever the Collision Defendants

---

[4](...continued)
Complaint. Plaintiffs' theory of joint and several liability as to Collision Defendants and Medical Defendants, however, has remained consistent throughout this litigation (until recently, after the Collision Defendants settled).

[5] She argued that "[i]t is entirely foreseeable that occupants of a vehicle involved in a severe collision . . . will be injured to an extent and degree that they require medical intervention, hence it is logically understood that claims arising from the collision, and from subsequent medical care arise from the same transaction or a common occurrence," and noted that "[t]he fact pattern is quite common." Doc. No. 101 at 5 & n.1. This assertion, however, would be true regardless of a theory of joint and several liability. *See, e.g.*, *Montalvo v. Lapez*, 77 Haw. 282, 300, 884 P.2d 345, 363 (1994) ("If an injury was legally caused by a defendant's negligence, the defendant can be held liable for subsequent negligent medical treatment for such injury (absent an intervening cause).") (citations omitted); *see also* Restatement (Second) Torts § 457 cmt. a (1965) ("[D]amages assessable against the [original tortfeasor] include not only the injury originally caused by the [tortfeasor's] negligence but also the harm resulting from the manner in which the medical, surgical, or hospital services are rendered.").

9

from the Medical Defendants. Doc. No. 126. The court, after reiterating Sheri Durham's arguments, reasoned that "Plaintiff asserts that all defendants are jointly liable for Jesicca Durham's injuries[.]" *Id.* at 11. The court continued:

> Jessica's injuries initially arose from the collision. She would not have sought treatment from the Kapiolani Defendants and Defendant Izuka if she had not been injured in the collision. Thus, the claims related to the alleged medical malpractice arise from the same occurrence as the claims related to the collision.

*Id.*

After the Motion to Sever was denied, the Complaint was amended, primarily because of Jessica's intervening death. In its Order denying severance, the court noted that her death might affect Plaintiffs' claims, but properly reasoned that those changes would not affect the decision not to sever. *See* Doc. No. 126 at 2 n.1. And, as set forth above, Plaintiffs' theory of joint and several liability as to all Defendants for Jessica's injuries has remained consistent throughout this action.

### III. **DISCUSSION**

Plaintiffs[6] move in limine to preclude evidence, testimony, and argument that Mark Durham may have liability for causing or contributing to any

---

[6] Because the arguments of Sheri Durham and Denise Jenkins (in her capacities both as (1) Plaintiff Administrator of the Estates of Jessica Durham and Mark Durham, and (2) as Counterclaim Defendant Estate of Mark Durham) are the same, the court refers here to them collectively as "Plaintiffs" and considers the two Motions in Limine in tandem.

10

of Jessica's injuries. Otherwise, they contend, the Medical Defendants will improperly seek to blame Mark Durham for their malpractice. They argue that (1) the record lacks evidence that Mark Durham caused or contributed to Jessica's injuries and (2) any role he may have had in causing Jessica's need for medical treatment is irrelevant to any subsequent medical malpractice by the Medical Defendants. Medical providers -- the argument goes -- take their patients as they find them, and cannot seek to absolve themselves of responsibility for their errors by blaming the patient (or others) for creating the need for medical care in the first place. Thus, Plaintiffs argue, the Medical Defendants should be precluded from raising potential liability of Mark Durham as a contributing cause of Jessica's injuries.

### A. Plaintiffs' Change in Position

Initially, it is beyond dispute that Plaintiffs' argument is incompatible with their theory of joint and several liability that they pursued since this action began. They have alleged consistently -- at least until the Collision Defendants settled -- that all Defendants are jointly and severally liable for the injuries. And they resisted (when it suited their purposes) severing the medical malpractice claims from, arguably, the more emotional collision aspects of the action -- asserting to the court that the cause and extent of Jessica's injuries involve a

"common event or transaction." They sought to hold any or all Defendants jointly and severally liable for their injuries (and Jessica's injuries in particular). Although they did not name Mark Durham's Estate as a Defendant, his status in potentially causing or contributing to the collision, and thereby potentially causing or contributing to Jessica's injuries, is indistinguishable from the prior status of the Collision Defendants.[7] Likewise, Plaintiffs obtained consistent recovery (settlements representing the automobile insurance policy limits) in a Texas action where the Estate of Mark Durham was a defendant.

Although the Medical Defendants have not invoked judicial estoppel, that doctrine's principles could apply here. *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (explaining that judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase" and setting forth general factors for its application) (citations omitted). The court, however, need not analyze elements of judicial estoppel, such as whether Plaintiffs have a sufficient explanation for changing positions or whether the positions are "clearly inconsistent." *See id.* at 749-50. The court would deny the Motions in Limine regardless of judicial estoppel -- Plaintiffs' theory of possible joint and several

---

[7] Plaintiffs' counsel forthrightly conceded to this proposition at the hearing on these Motions.

liability is consistent with established common-law doctrines and with Hawaii law regarding apportionment, and with the current (although disputed) evidentiary record as to Mark Durham's potential contribution.

**B.      Potential Joint and Several Liability of the Estate of Mark Durham**

The Estate of Mark Durham is a possible joint tortfeasor with the Medical Defendants. Under HRS § 663-11, "the term 'joint tortfeasors' means two or more persons jointly or severally liable in tort for the *same injury*[.]" (Emphasis added.) In these Motions, the parties have not focused on the "same injury" requirement in § 663-11 and possible apportionment among different tortfeasors as to causation (*e.g.*, distinguishing between injuries to Jessica's leg and other injuries, or whether there is any relation between the accident and Jessica's aortic dissection and/or her death). But, at this stage of the proceedings, the Estate of Mark Durham -- like the Collision Defendants before they settled -- remains a potential joint tortfeasor. As a potential joint tortfeasor, the Medical Defendants may attempt to seek contribution from the Estate of Mark Durham for any indivisible injuries he may have caused, or contributed to causing. *See* HRS § 663-12 ("The right of contribution exists among joint tortfeasors.").

In this regard, consistent with HRS § 663-11, "where a plaintiff's injuries are separable [*i.e.*, the injury is not the same], defendants are not jointly or

severally liable for the damages." *Auten v. Franklin*, 942 N.E.2d 500, 509 (Ill. App. 2010).[8] On the other hand, "'where defendants, albeit sharing no common purpose or duty, and failing to act in concert, nevertheless acted concurrently to produce an *indivisible* injury to the plaintiff,' the defendants are joint tortfeasors." *Id.* (citations omitted). This concept as stated in *Auten* was adopted from the Restatement (Second) of Torts § 433A (1965), and is also consistent with the Restatement (Third) of Torts: Apportionment of Liability § 26 (2000). *See Auten*, 942 N.E.2d at 509-11; *see also, e.g.*, *Trout v. Milton S. Hershey Med. Ctr.*, 572 F. Supp. 2d 591, 595 (M.D. Pa. 2008); *McReynolds v. Bigler*, 1990 WL 171064, at *6 (D. Kan. Oct. 15, 1990); *Bendar v. Orsen*, 588 A.2d 1264, 1269-71 (N.J. Super. 1991); *State ex rel. Tarrasch v. Crow*, 622 S.W.2d 928, 932 (Mo. 1981).

The status of the Estate of Mark Durham thus depends in part upon whether Jessica's injuries are indivisible or apportionable. Hawaii caselaw has not specifically addressed whether this is a question of law for the court, or a fact-based question for a jury. But cases from other jurisdictions indicate that the question whether injuries are indivisible in this context is suitable for a jury if the evidence could support such a finding. *See, e.g.*, *Fed. Sav. & Loan Ins. Corp. v.*

---

[8] Like Hawaii, Illinois uses a "same injury" standard. *See* 740 Ill. Comp. Stat. 100/2(a) ("Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them.").

*Reeves*, 816 F.2d 130, 136 (4th Cir. 1987) ("Since the determination of whether the facts supported an apportionment of damages was one upon which reasonable men could differ, it was properly left to the jury.") (citation and quotation marks omitted) (Maryland law); *Huff v. Harbaugh*, 435 A.2d 108, 111 (Md. App. 1981) (reasoning that, where an individual is injured as the result of the negligence of another and receives additional injuries in subsequently receiving medical treatment, the question whether the original and subsequent tortfeasors are responsible for the "same" injuries so as to render them joint tortfeasors would be a question of fact); *Continental Cas. Co. v. Am. Nat'l Bank & Trust Co. of Chic.*, 896 N.E.2d 340, 346 (Ill. App. 2008) (remanding because "there is a question of fact regarding whether . . . liability arises out of the same injury . . . and [thus] whether the Contribution Act applies to bar plaintiff's causes of action"); *But cf.*, *e.g.*, *Trull v. Volkswagen of Am., Inc.*, 761 A.2d 477, 483 (N.H. 2000) ("Whether the plaintiffs' injuries are indivisible or divisible is a question of law for the trial judge.").[9]

---

[9] Cases indicating that apportionment/indivisibility is a question of law often rely on the Restatement (Second) Torts § 434(1)(b). *See, e.g.*, *Voyles v. Corwin*, 441 A.2d 381, 383 (Pa. Super. 1982); *Mitchell v. Volkswagenwerk, AG*, 669 F.2d 1199, 1208-09 (8th Cir. 1982) (Minnesota law). Section 434 provides:

(1) It is the function of the court to determine

(a) whether the evidence as to the facts makes an issue upon which
(continued...)

Of importance, although not directly answering whether *indivisibility* of injury is a question of fact for purposes of a joint tortfeasor analysis, Hawaii cases certainly hold that related questions of apportionability are suitable for a jury. *See Montalvo v. Lapez*, 77 Haw. 282, 298-300, 884 P.2d 345, 361-63 (1994); *Loui v. Oakley*, 50 Haw. 260, 264-65, 438 P.2d 393, 396-97 (1968). Hawaii law is thus consistent with those jurisdictions indicating indivisibility of injury can be appropriate for a jury to decide (where facts are disputed).

---

[9](...continued)
>
> the jury may reasonably differ as to whether the conduct of the defendant has been a substantial factor in causing the harm to the plaintiff;
>
> (b) whether the harm to the plaintiff is capable of apportionment among two or more causes; and
>
> (c) the questions of causation and apportionment, in any case in which the jury may not reasonably differ.
>
> (2) It is the function of the jury to determine, in any case in which it may reasonably differ on the issue,
>
> (a) whether the defendant's conduct has been a substantial factor in causing the harm to the plaintiff, and
>
> (b) the apportionment of the harm to two or more causes.

Thus, even under the Restatement, the court only determines whether harm "is capable of apportionment," leaving to a jury to determine the actual apportionment where a jury "may reasonably differ on the issue."
   Likewise, the Restatement (Third) Apportionment of Liability § 26 comment h states that "[w]hether damages are divisible is a question of fact." *See also id.* cmt. l ("[W]hether damages are divisible depends on factual determinations about the plaintiff's damages and the causal relationship between the tortious acts and those damages.").

16

The parties have not argued, one way or the other, whether Jessica's injuries, including her death, are divisible. That is, no party has specifically addressed whether the Collision Defendants (or Mark Durham) and Medical Defendants caused the "same injury" as to Jessica's: (1) leg injuries and ultimate amputation, and (2) heart condition and ultimate death. And, based on the current disputed evidentiary record, the court concludes that questions regarding whether the Estate of Mark Durham is a joint tortfeasor are issues for a jury. No summary judgment motion was filed regarding the "same injury" question -- and, on the current record, the court cannot find as a matter of law that harm is *not* capable of apportionment.[10] Accordingly, evidence or argument regarding whether Mark Durham caused or contributed to Jessica's injuries should not be excluded, especially at this motion-in-limine stage. That is, given the current posture of the

---

[10] A motion in limine should not be used to determine matters that should be addressed, if not at trial, by a motion for summary judgment. *See, e.g.*, *C&E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D. D.C. 2008) ("[A] motion in limine should not be used to resolve factual disputes or weigh evidence."). That is, these Motions in Limine cannot be used as a vehicle to determine as a matter of law that Mark Durham is not a joint tortfeasor because there is insufficient admissible evidence of his fault. And, as noted above, the court easily concludes that there is evidence that he could have had some role in causing the collision itself.

Similarly, by seeking to determine the status of Mark Durham as a non-joint tortfeasor in the current Motions in Limine, Plaintiffs are also inappropriately seeking summary adjudication of the counterclaims against the Estate of Mark Durham -- past the dispositive motions deadline, when the parties are preparing for trial -- where his status raises complicated issues of law and fact regarding the nature, divisibility, and apportionability of Jessica's injuries. In any event, as discussed here, there appear to be questions of material fact as to Mark Durham's potential role in causing or contributing to those injuries and whether they are divisible.

proceedings, and current evidentiary record, such evidence is relevant and remains an issue for trial.

**C.    Plaintiffs' Arguments Regarding Prior Negligence**

Plaintiffs cite to cases for the proposition that medical providers may not use a patient's prior negligent conduct -- conduct that created the need for medical treatment -- as a defense against allegations of medical malpractice. *See, e.g.*, *Yuscavage v. Jones*, 446 S.E.2d 209, 211 (Ga. App. 1994) ("The cause of an injury for which a party seeks medical treatment has no relevancy as to whether the party contributed to a subsequent injury allegedly caused by negligent medical treatment."); *Fritts v. McKinne*, 934 P.2d 371, 374 (Okla. App. 1996) ("Under the guise of a claim of contributory negligence, a physician simply may not avoid liability for negligent treatment by asserting that the patient's injuries were originally caused by the patient's own negligence."); *Krklus v. Stanley*, 833 N.E.2d 952, 962 (Ill. App. 2005) ("[C]ourts have not allowed evidence of contributory negligence in cases where a patient negligently creates the need for treatment.").

Such cases are easily distinguishable. These types of cases exemplify the "eggshell plaintiff" concept that a physician takes patients as they are found. And this concept might apply to bar evidence if the Medical Defendants were attempting to reduce liability for Jessica's own negligence. But here, the Medical

Defendants would not attempt to introduce evidence that *Jessica* was contributorily negligent in creating the need for medical treatment. Rather, they would be introducing evidence that a joint tortfeasor -- the driver of the car, Mark Durham -- had some negligence that caused or contributed to the accident and thus caused indivisible injuries.

## IV. CONCLUSION

The Motions in Limine (MIL No. 1., Doc. No. 1103, and MIL No. 11, Doc. No. 1108) and related Substantive Joinder (Doc. No. 1157) are DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 23, 2011.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Durham et al. v. County of Maui et al.*, Civ. No. 08-00342 JMS/RLP, Order Denying (1) Plaintiffs' Motion in Limine No. 1 [Doc. No. 1103], (2) Counterclaim Defendant Denise Jenkins' Joinder to Plaintiffs' Motion in Limine No. 1 [Doc. No. 1157], and (3) Counterclaim Defendant Denise Jenkins' Motion in Limine to Bar Evidence of Negligence of Mark Durham [Doc. No. 1108]