IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHERI GAIL DURHAM, Individually and as Next Friend of MARISA UMA LAMA DURHAM, Minor, ET AL.,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF MAUI, ET AL.,<br><br>Defendants. | CIV. NO. 08-00342 JMS/RLP<br><br>ORDER DENYING PLAINTIFFS' MOTION IN LIMINE NO. 2 TO EXCLUDE ANY TOXICOLOGY EXPERT REPORT OFFERED BY THE REMAINING DEFENDANTS AND ANY EVIDENCE OF, REFERENCE TO, OR QUESTIONING REGARDING TESTS PERFORMED ON MARK DURHAM'S BLOOD SAMPLES, DOC. NO. 1100 |

**ORDER DENYING PLAINTIFFS' MOTION IN LIMINE NO. 2 TO EXCLUDE ANY TOXICOLOGY EXPERT REPORT OFFERED BY THE REMAINING DEFENDANTS AND ANY EVIDENCE OF, REFERENCE TO, OR QUESTIONING REGARDING TESTS PERFORMED ON MARK DURHAM'S BLOOD SAMPLES, DOC. NO. 1100**

**I. INTRODUCTION**

This action arises from a July 26, 2006 two-car accident in which Mark Durham and his two daughters, Jessica and Marisa, were injured after Mark Durham allegedly failed to heed a stop sign at the intersection of Pulehu Road and Hansen Road in the County of Maui. Mark Durham passed away as a result of his injuries, and a post-mortem blood test signed by Clifford Wong, Ph.D. ("Dr.

Wong") from Clinical Laboratories of Hawaii ("CLH") confirmed the presence of 2.1 ng/ml of delta-9-tetrahydrocannabinol ("THC"), which is the active ingredient in marijuana (the "CLH Report"). The CLH report concluded that the amount of THC detected indicates recent use of marijuana.

Plaintiffs[1] have filed two separate motions seeking to exclude this evidence, which both then-Magistrate Judge Kobayashi and the undersigned have denied. In their latest attempt to have this evidence excluded, *i.e.*, Plaintiff's Motion in Limine No. 2 to Exclude Any Toxicology Expert Offered by the Medical Defendants[2] and Any Evidence Of, Reference To, or Questioning Regarding Tests Performed on Mark Durham's Blood Samples ("Plaintiff's MIL 2"), Doc. No. 1100, Plaintiffs argue that this evidence should be excluded because the Defendants remaining in this action failed to name Dr. Wong as an expert and given that there is no evidence of Mark Durham's impairment, the CLH Report fails the Federal Rule of Evidence 403 analysis. Based on the following, the court DENIES Plaintiff's MIL 2.

---

[1] Plaintiffs include Sheri Gail Durham ("Sheri Durham"), individually and as next friend of Marisa Durham, and Denise Ann Jenkins ("Jenkins"), as the Administrator of the Estates of Mark Durham and Jessica Durham.

[2] The Medical Defendants include Hawaii Pacific Health ("HPH"), Kapiolani Medical Center for Women and Children ("KMCWC"), Kapiolani Medical Specialists ("KMS"), Shilpa J. Patel, M.D. ("Dr. Patel") (collectively, "Kapiolani Defendants"), James Y. Sim, M.D., and James Y. Sim, M.D., LLC (collectively, "Dr. Sim"), and Byron H. Izuka, M.D. and Byron H. Izuka, M.D. LLC (collectively, "Dr. Izuka").

## II. BACKGROUND

### A. Factual Background

As the court has previously recited, *see Durham v. County of Maui*, 742 F. Supp. 2d 1121, 1125 (D. Haw. 2010), on July 26, 2006, at approximately 11:52 a.m., Mark Durham was driving his two daughters Marisa and Jessica on Pulehu Road when he allegedly failed to heed the stop sign at the intersection of Hansen Road, resulting in the SUV driven by Patty Conte hitting Mark Durham's vehicle on its left side. Witnesses provided Maui police officers statements that Mark Durham's vehicle was "traveling fast" and "completely 'blew'" the stop sign. In comparison, Marisa testified that she remembered Mark Durham coming to a stop. Mark Durham passed away as a result of his injuries in the accident.

At the request of the Maui Police Department, Dr. Anthony Manoukian performed an autopsy on Mark Durham and sent a post-mortem blood sample to CLH for testing. Dr. Wong's CLH Report confirmed the presence of 2.1 ng/ml of THC in the sample, and concluded that the amount of THC detected indicates recent use of marijuana.

### B. Procedural Background

Based on the July 26, 2006 car accident, Plaintiffs originally brought claims against a number of Defendants, including Ford Motor Company ("Ford")

for negligence, gross negligence, strict liability, and derivative claims for wrongful death and survivorship, all relating to alleged design defects in the subject vehicle; Maui Windsurfing Vans, Inc. for negligence, strict liability, and survival and wrongful death relating to the subject vehicle; the County of Maui for road defect and dangerous conditions at the accident scene; Patty Conte, the driver of the other vehicle, for negligence; and medical malpractice claims related to the care provided to Jessica against Medical Defendants.

Several of the Defendants asserted affirmative defenses and/or counterclaims against Mark Durham's estate on the basis that he was negligent in causing the accident and was impaired. Although Ford identified both Drs. Wong and Manoukian as unretained experts, Doc. No. 780-5, none of the other Defendants identified Drs. Wong or Manoukian, or any other experts, to testify regarding the CLH report. Plaintiffs subsequently produced the expert rebuttal report of toxicologist Dr. Robert B. Palmer, who attacked, among other things, Dr. Wong's finding of recent use of marijuana.

On April 22, 2010, Plaintiffs filed a motion to exclude any evidence regarding the CLH Report and any testimony by Dr. Wong regarding the presence of THC in Mark Durham's postmortem blood sample. In her June 30, 2010 Order Granting in Part and Denying in Part Plaintiffs' Motion to Exclude Expert

Designation of Clifford Wong, Ph.D. and Evidence of, or Related to, Reported THC in Mark Durham's Postmortem Blood Sample (the "June 30 Order"), then-Magistrate Judge Leslie E. Kobayashi found that Dr. Wong's findings and testimony regarding THC are reliable under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and are relevant to the issues in this case such that Dr. Wong could testify as a percipient witness regarding his testimony and conclusions. *Durham v. County of Maui*, 729 F. Supp. 2d 1188, 1196 (D. Haw. 2010). The June 30 Order denied without prejudice, however, Plaintiffs' request pursuant to Federal Rule of Evidence 403 to exclude this evidence or any conclusions that Mark Durham's alleged drug use contributed to the accident.

On August 31, 2010, the court affirmed the June 30 Order, and denied Plaintiffs' Motion to Exclude Evidence Of, or Related To, Reported THC in Mark Durham's Postmortem Blood Sample under Rule 403 (the "August 31 Order"). *Durham*, 742 F. Supp. 2d at 1121. Specifically, the August 31 Order affirmed the June 30 Order's findings that the CLH Report met the *Daubert* standard and was relevant, and that its probative value was not substantially outweighed by the danger of unfair prejudice.

On May 2, 2011, Plaintiffs filed their MIL 2. On May 9, 2011, Dr. Izuka and Kapiolani Defendants filed Oppositions, and Plaintiffs filed a Reply on

May 16, 2011. A hearing was held on June 3, 2011.

### III. DISCUSSION

Although Plaintiffs make several related arguments, they boil down to two main issues -- whether Medical Defendants should be barred from presenting testimony by Dr. Wong for failure to disclose him as an expert, and whether evidence regarding the CLH Report should otherwise be excluded. The court addresses these issues in turn.

**A.     Whether Medical Defendants May Call Dr. Wong to Provide Expert Testimony**

Plaintiffs argue that Medical Defendants failed to disclose Dr. Wong as an expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2)(A) such that they should be barred from presenting his testimony at trial pursuant to Rule 37(c). Doc. No. 1100-1 at 6-7. The court concludes that Medical Defendants failed to comply with Rule 26(a)(2)(A), but they have shown the failure to be harmless pursuant to Rule 37(c).

   *1.     Rule 26(a)(2)(A)*

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(A), "a party must disclose to the other parties the identity of any witness it may use at trial to

present [expert testimony]."[3]  If a party specifically employs or retains the witness to give expert testimony in the case, Rule 26(a)(2)(B) provides that the expert disclosure must include an expert report.  In other words, "[w]hile all experts must be disclosed under Rule 26(a)(2)(A), only 'retained' experts must provide Rule 26(a)(2)(B) reports." *Aumand v. Dartmouth Hitchcock Med. Ctr.*, 611 F. Supp. 2d 78, 88 (D. N.H. 2009) (citations and quotations omitted).

According to its plain language, Rule 26(a)(2)(A)'s disclosure requirement applies to all witnesses providing expert testimony, including percipient witnesses such as treating physicians and others with direct knowledge of the facts of the case.  *See also Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004) ("[W]e agree with the district court that even treating physicians and treating nurses must be designated as experts if they are to provide expert testimony."); *Kirkham v. Societe Air Fr.*, 236 F.R.D. 9, 11 n.2 (D. D.C. 2006) (explaining that the 2000 amendments to Federal Rule of Evidence 701 superceded the view "that a treating physician is not even an expert witness subject to disclosure under Rule 26(a)(2)(A) to the extent his testimony relates to his

---

[3] In turn, Federal Rule of Evidence 702 provides that expert testimony is admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue"; the witness is qualified "by knowledge, skill, experience, training, or education"; and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

personal observations with a plaintiff/patient prior to the litigation"); *Aumand*, 611 F. Supp. 2d at 88 (finding that medical doctors, despite being percipient witnesses, were subject to Rule 26(a)(2)(A) because Rule 702 encompasses "treating physician's diagnoses, prognoses, or other conclusions as to the patient's condition, because those are examples of the physician's 'specialized knowledge' -- indeed, it is to take advantage of that specialized knowledge that laypeople ordinarily seek the advice of physicians and other medical professionals").

To the extent an expert's testimony is based on her own diagnosis and treatment, however, that witness is not "retained or specially employed" or "regularly employed" to provide opinion testimony and therefore is not subject to Rule 26(a)(2)(B)'s report requirement. *Redfoot v. B.F. Ascher & Co.*, 2007 WL 1593239, at *13 (N.D. Cal. June 1, 2007) ("Treating physicians must be identified as expert witnesses pursuant to Rule 26(a)(2)(A) [but] are not subject to the 'report' requirement of Rule 26(a)(2)(B) . . . ."); *see also Goodman v. Staples The Office Superstore, LLC*, --- F.3d ----, 2011 WL 1651246, at *8 (9th Cir. May 3, 2011) ("[W]e join those circuits that have addressed the issue and hold that a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment.").

personal observations with a plaintiff/patient prior to the litigation"); *Aumand*, 611 F. Supp. 2d at 88 (finding that medical doctors, despite being percipient witnesses, were subject to Rule 26(a)(2)(A) because Rule 702 encompasses "treating physician's diagnoses, prognoses, or other conclusions as to the patient's condition, because those are examples of the physician's 'specialized knowledge' -- indeed, it is to take advantage of that specialized knowledge that laypeople ordinarily seek the advice of physicians and other medical professionals").

To the extent an expert's testimony is based on her own diagnosis and treatment, however, that witness is not "retained or specially employed" or "regularly employed" to provide opinion testimony and therefore is not subject to Rule 26(a)(2)(B)'s report requirement. *Redfoot v. B.F. Ascher & Co.*, 2007 WL 1593239, at *13 (N.D. Cal. June 1, 2007) ("Treating physicians must be identified as expert witnesses pursuant to Rule 26(a)(2)(A) [but] are not subject to the 'report' requirement of Rule 26(a)(2)(B) . . . ."); *see also Goodman v. Staples The Office Superstore, LLC*, --- F.3d ----, 2011 WL 1651246, at *8 (9th Cir. May 3, 2011) ("[W]e join those circuits that have addressed the issue and hold that a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment.").

Applying this framework, Dr. Wong's testimony is clearly the subject of expert testimony. Medical Defendants seek to have Dr. Wong testify regarding CLH's testing of Mark Durham's post-mortem blood sample, the results, and his conclusions of recent use of marijuana. Such evidence is not within the common knowledge of a lay person and comes within Dr. Wong's specialized knowledge. But because Medical Defendants did not disclose Dr. Wong as an expert, they have violated Rule 26(a)(2)(A). That is, as a non-retained percipient expert, Medical Defendants were required -- but failed -- to disclose Dr. Wong as an expert under Rule 26(a)(2)(A).

In opposition, Medical Defendants argue that Dr. Wong is akin to a treating physician who can testify regarding his diagnosis and treatment without producing an expert report. Medical Defendants apparently have confused the requirements of Rule 26(a)(2)(A) versus Rule 26(a)(2)(B) -- as explained above, although percipient witnesses such as treating physicians need not produce expert reports under Rule 26(a)(2)(B), they must nonetheless be disclosed as expert witnesses under Rule 26(a)(2)(A).

Medical Defendants also argue that Dr. Wong will provide lay testimony admissible under Federal Rule of Evidence 701, and not expert testimony under Rule 702 such that they need not disclose him as an expert. The

9

court rejects this argument. Rule 701 allows lay testimony as to "opinions and inferences" only if, among other restrictions, they are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). This limitation, added to the Federal Rules of Evidence in 2000, "makes clear that any part of a witness's testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules." *Id*. advisory committee's note (2000).

Finally, Medical Defendants argue that the June 30 Order determined that Dr. Wong could testify as a percipient witness regarding his testing of the blood sample. *See* Doc. No. 1118, at 4-5. Although the June 30 Order held that Dr. Wong could "give opinion testimony akin to a treating physician, if the opinions were disclosed in the CLH Report and/or his deposition testimony," *Durham*, 729 F. Supp. 2d at 1196, Ford had disclosed Dr. Wong as an expert witness such that the June 30 Order did not discuss the issue of noncompliance with Rule 26(a)(2)(A). Thus, the June 30 Order does not provide a blanket determination of admissibility for all Defendants.

2.  *Rule 37(c)(1)*

The court now turns to Rule 37(c)(1), and concludes that Medical Defendants have proven that the lack of disclosure is harmless.

Specifically, Rule 37(c)(1) provides that if a party fails to properly disclose an expert, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Factors that may assist the court in determining whether "a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. 2010) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)); *see also Transbay Auto Serv., Inc. v. Chevron U.S.A. Inc.*, 2010 WL 4591596, at *7 (N.D. Cal. Nov. 3, 2010). "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

Applying these factors, Medical Defendants have shown that Plaintiffs will not be prejudiced if Dr. Wong is permitted to testify at trial.

Plaintiffs have known and prepared for quite some time that Dr. Wong would be a witness at trial -- Ford identified Dr. Wong as a percipient expert witness on December 2, 2009, *see* Doc. No. 780, the parties have deposed Dr. Wong, the parties have repeatedly named Dr. Wong as a potential witness in their disclosures and pretrial statements, and Plaintiffs have retained their own expert to counter Dr. Wong's testimony that Mark Durham had recently used marijuana. In other words, despite Medical Defendants' technical violation of Rule 26(a)(2)(A), the parties -- including Plaintiffs -- have prepared throughout this action and expected Dr. Wong's testimony at trial. Indeed, at the June 3, 2011 hearing, Plaintiffs conceded that there was no prejudice. Given the parties' preparation for this testimony, trial will not be disrupted by Dr. Wong being permitted to testify.

Finally, there is no bad faith or willfulness involved in Medical Defendants' failure to timely disclose Dr. Wong as a percipient expert. Although complexity is not an excuse for failure to precisely follow the Federal Rules, this is a complex action with multiple moving parts and there was no doubt that Medical Defendants intended to call Dr. Wong to testify regarding the testing and results of Mark Durham's post-mortem blood sample. It appears that Medical Defendants may have relied upon Ford to call Dr. Wong as a witness and were caught with this technical violation of Rule 26(a)(2)(A) when Ford and Plaintiffs subsequently

settled.

Thus, the court finds that Medical Defendants may present Dr. Wong to testify regarding his conclusions and opinions formed "within [his] professional expertise while testing Mark Durham's blood sample . . . if the opinions were disclosed in the CLH Report and/or his deposition testimony." *Durham*, 729 F. Supp. 2d at 1196.

**B.  Whether the CLH Report Is Barred by Federal Rule of Evidence 403**

Plaintiffs argue that "evidence of the positive THC result should be excluded pursuant to FRE Rule 403 because the evidence is highly prejudicial and there is no evidence that Mark Durham was actually impaired [at] the time of the accident." Doc. No. 1100-1 at 16. The court has already addressed -- and rejected -- this argument once. *See Durham*, 742 F. Supp. 2d at 1131-32. Plaintiffs nonetheless ask the court to "re-evaluate" the issue given that only medical malpractice claims remain. That some Defendants have settled does not change the court's analysis.

As the August 31 Order previously explained, although the evidence is prejudicial,

> this evidence is also probative to the issues in this action -- Mark Durham's alleged recent drug use shows a lack of care on his part and suggests that he may have been contributorily negligent in causing the accident.

13

> Specifically, Defendants have presented evidence that
> Mark Durham may have driven the vehicle without due
> care -- the accident occurred in daylight, in dry
> conditions, and on a road which Mark Durham knew, yet
> he "blew" the stop sign at a high rate of speed. As
> explained above, a jury can infer from the positive test
> result for THC and corresponding finding of recent use
> that Mark Durham was impaired while driving the
> vehicle, and expert testimony is not necessary to establish
> this link.

*Id.* Whether Mark Durham was negligent is still an issue in this action -- some Medical Defendants have asserted cross-claims against Mark Durham as a joint tortfeasor, and the court has denied Plaintiffs' Motion in Limine seeking to preclude evidence, testimony, and argument as to Mark Durham's liability for causing or contributing to Jessica's injuries.

Thus, the court finds that Medical Defendants may present Dr. Wong and the CLH Report at trial, and DENIES Plaintiffs' Motion in Limine seeking exclusion of this testimony and evidence.

## IV. <u>CONCLUSION</u>

Based on the above, the court GRANTS in part and DENIES in part Plaintiffs' Motion in Limine No. 2 to Exclude Any Toxicology Expert Report Offered by the Remaining Defendants and Any Evidence Of, Reference To, or Questioning Regarding Tests Performed on Mark Durham's Blood Samples, Doc No. 1100. Prior to trial, the parties shall meet and confer to discuss

the scope of Dr. Wong's testimony consistent with the court's Orders on this issue.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, June 23, 2011.



        /s/ J. Michael Seabright
        J. Michael Seabright
        United States District Judge

*Durham et al. v. County of Maui et al.*, Civ. No. 08-00342 JMS/RLP, Order Granting in Part and Denying in Part Plaintiffs' Motion in Limine No. 2 to Exclude Any Toxicology Expert Report Offered by the Remaining Defendants and Any Evidence Of, Reference To, or Questioning Regarding Tests Performed on Mark Durham's Blood Samples, Doc. No. 1100