IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHERI GAIL DURHAM, Individually and as Next Friend of MARISA UMA LAMA DURHAM, Minor, ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF MAUI, ET AL., <br><br> Defendants. | CIV. NO. 08-00342 JMS/RLP <br><br> ORDER (1) GRANTING PLAINTIFFS' MOTION IN LIMINE NO. 7 TO EXCLUDE THE EXPERT REPORT OF DR. RON BLAIR, DOC. NO. 1182; AND (2) DENYING DEFENDANTS JAMES Y. SIM, M.D. AND JAMES Y. SIM, M.D., LLC'S MOTION IN LIMINE REGARDING ADMISSIBILITY OF PLAINTIFFS' EXPERT REPORT DISCLOSED IN PROCEEDING IN THE COUNTY COURT OF DALLAS COUNTY TEXAS, DOC. NO. 1179 |

**ORDER (1) GRANTING PLAINTIFFS' MOTION IN LIMINE NO. 7 TO EXCLUDE THE EXPERT REPORT OF DR. RON BLAIR, DOC. NO. 1182; AND (2) DENYING DEFENDANTS JAMES Y. SIM, M.D. AND JAMES Y. SIM, M.D., LLC'S MOTION IN LIMINE REGARDING ADMISSIBILITY OF PLAINTIFFS' EXPERT REPORT DISCLOSED IN PROCEEDING IN THE COUNTY COURT OF DALLAS COUNTY TEXAS, DOC. NO. 1179**

## I. INTRODUCTION

Plaintiffs Sheri Gail Durham and Denise Ann Jenkins, as the Administrator of the Estate of Jessica Durham, (collectively "Plaintiffs"), allege negligence claims against several Hawaii Medical Defendants[1] relating to

---

[1] Medical Defendants include Hawaii Pacific Health, Kapiolani Medical Center for Women and Children ("KMCWC"), Kapiolani Medical Specialists, Shilpa J. Patel, M.D. ("Dr. Patel") (collectively, "Kapiolani Defendants"), James Y. Sim, M.D., and James Y. Sim, M.D.,
(continued...)

treatment they provided Jessica Durham for the multiple injuries she suffered in a two-vehicle accident on Maui on July 26, 2006. Jessica was subsequently transferred to Children's Medical Center ("CMC") in Dallas, Texas, and passed away over two years later on December 25, 2008 from an aortic dissection.

On February 17, 2011, Plaintiffs filed a Petition in Texas State Court asserting negligence claims against CMC and several Texas medical providers (the "Texas Action"). *See* Doc. No. 1099-3. As required by Texas Civil Practice and Remedies Code ("TCPRC") § 74.351(a), on June 17, 2011, Plaintiffs served on the Texas defendants an expert report by Dr. Ron Blair identifying various alleged breaches of care by the Texas defendants (the "Blair Report"). *See* Doc. No. 1179-3.

The parties now dispute whether the Blair Report is admissible in this action as a statement of a party opponent. Based on the following, the court finds that Medical Defendants have not carried their burden of establishing the admissibility of the Blair Report and therefore (1) GRANTS Plaintiffs' Motion in Limine No. 7 to Exclude the Expert Report of Dr. Ron Blair, Doc. No. 1182; and (2) DENIES Dr. Sim's Motion in Limine Regarding Admissibility of Plaintiffs'

---

[1](...continued)
LLC (collectively, "Dr. Sim"), and Byron H. Izuka, M.D. and Byron H. Izuka, M.D. LLC (collectively, "Dr. Izuka").

Expert Report Disclosed in Proceeding in the County Court of Dallas County Texas, Doc. No. 1179.[2]

## II. ANALYSIS

This court has already outlined the medical treatment Medical Defendants provided to Jessica, as well as the medical treatment Jessica received at CMC. *See Durham v. County of Maui*, 2011 WL 2532423 (D. Haw. June 23, 2011). This court has also already held that evidence regarding Jessica's medical treatment in Texas is relevant to (1) Kapiolani Defendants and Dr. Izuka's assertions they did not breach the standard of care and that Texas medical providers caused her injuries; and (2) Kapiolani Defendants' assertion that Texas medical providers were the superseding cause of Jessica's injuries. Given that the Blair Report describes medical treatment Jessica received at CMC and information provided to CMC, factual statements explaining Jessica's medical care would be admissible as relevant so long as they are not hearsay or fall within a hearsay exception.

To that end, the parties dispute whether the Blair Report is admissible

---

[2] Dr. Izuka and Kapiolani Defendants joined Dr. Sim's Motion in Limine. *See* Doc. Nos. 1183, 1195.

as a statement of party opponent pursuant to Federal Rule of Evidence 801(d)(2).³

Rule 801(d)(2) provides that an admission by a party opponent statement is not hearsay if:

> The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . .

As the proponents of the Blair Report, Medical Defendants have the burden of establishing by a preponderance of the evidence that Rule 801(d)(2) applies. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (holding that proponent of hearsay must prove exception or exemption by preponderance of the evidence).

Several subsections of Rule 801(d)(2) clearly do not apply. The Blair Report is not a statement by Plaintiffs and Medical Defendants offer no argument that Dr. Blair is a "representative" of Plaintiffs under Rule 801(d)(2)(A). Further, Medical Defendants offer no argument that Plaintiffs have manifested an adoption or belief in the truth of the Blair Report that would trigger Rule 801(d)(2)(B). Nor

---

³ Plaintiffs raise additional arguments against the Blair Report's admissibility. Because the court finds that Medical Defendants have not carried their burden of establishing that Rule 801(d)(2) applies, the court need not address Plaintiffs' additional arguments seeking to exclude the Blair Report.

4

does Rule 801(d)(2)(D) apply -- Medical Defendants proffer no argument that Dr. Blair is Plaintiffs' agent or servant. *See* Doc. No. 1179-1, at 13; *see also United States v. Bonds*, 608 F.3d 495, 504 (9th Cir. 2010) (outlining factors to consider in determining whether an individual is an independent contractor or an agent).

Turning to Rule 801(d)(2)(C), the Ninth Circuit has not addressed the specific issue of whether an expert report is "a statement by a person authorized by the party to make a statement concerning the subject." *Cf. In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1016 (9th Cir. 2008) (holding that expert trial testimony provided in a previous trial is admissible because a party cannot "exclude trial testimony that she, herself, proffered"). Indeed, there appears to be scant caselaw addressing this specific issue -- and as a result the parties instead ask the court to draw parallels to cases addressing the admissibility of expert deposition and trial testimony. As recognized by *Glendale Federal Bank, FSB v. United States*, 39 Fed. Cl. 422, 423 (1997), however, "[t]his area of the law is murky at best with several divergent streams and many highly fact specific eddies making up the case law."

In navigating this unsettled area of law, the court finds persuasive *Glendale*, which *Hanford* cited with approval. In addressing the admissibility of expert deposition testimony, *Glendale* "attempt[ed] to craft a coherent and

functional rule based upon the conflicting interests in a full and fair trial based on all the basic or necessary facts surrounding the underlying dispute and the parties' right to explore their own cases fully without the fear that preliminary evidence could harm their case later." *Id.* Specifically, *Glendale* reasoned that an expert witness "is expected to give his own honest, independent opinion," such that "[h]e is not the sponsoring party's agent at any time merely because he is retained as its expert witness." *Id.* at 424. Rather, it is only when the party presents the expert at trial that the court may "assume that those experts who have not been withdrawn are those whose testimony reflects the position of the party who retains them." *Id. Glendale* explained that trial is the critical juncture where an expert's testimony is "authorized" by the party:

> At the beginning of trial we may hold the parties to a final understanding of their case and hence an authorization of their expert witnesses who have not been withdrawn. At this point when an expert is put forward for trial it is reasonable and fair to presume they have been authorized. This of necessity includes prior deposition testimony of that expert. This is also a rational and fair point at which to draw the authorization line.

*Id.* at 424-25; *Accord Lizotte v. Praxair, Inc.*, 640 F. Supp. 2d 1335, 1338-39 (W.D. Wash. 2009); *see also Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 164 (3d Cir. 1995) (holding that expert testimony is not a statement of a party opponent

because "an expert witness is not subject to the control of the party opponent with respect to consultation and testimony he or she is hired to give").[4]

Although the court need not craft a particular rule drawing a clear line between when expert opinions qualify as statements of party opponents, the court finds persuasive *Glendale's* focus on whether the party has truly authorized the particular statements by the expert (by, for example, presenting the expert at trial). Here, the Blair Report does not have any indicia that Plaintiffs truly authorized the particular statements in the Blair Report. On its face, the Blair Report provides the opinions of Dr. Blair and not Plaintiffs -- the Blair Report states that Dr. Blair was asked to provide opinions regarding Jessica's medical care at CMC, and throughout the report Dr. Blair provides *his* opinion. Doc. No. 1179-3, at Blair

---

[4] Medical Defendants cite a panopoly of cases to support their argument that the Blair Report is admissible, but these cases are ultimately unhelpful. Many of them do not address admissibility of an expert report and/or suggest any guiding principles that would apply to the Blair Report. *See, e.g.*, *Collins v. Wayne Corp.*, 621 F.2d 777, 782 (5th Cir. 1980) (holding that expert's deposition testimony was a statement of the party); *Glaesman v. Shop-Rite Foods, Inc.*, 438 F.2d 341, 342 (10th Cir. 1971) (holding that trial court properly allowed plaintiff to read into the record parts of pleadings and interrogatory responses filed in previous action as statements against interest); *United States v. Ala. Power Co.*, --- F. Supp. 2d ----, 2011 WL 1158037, at *8 n.10 (N.D. Ala. Mar. 14, 2011) (allowing expert testimony provided in previous action where other party did not oppose). Those cases that do address expert reports provide little analysis and/or address facts not before this court. *See, e.g.*, *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1306-07 (9th Cir. 1983) (holding that report prepared at the request and substantial participation of a company, and then subsequently distributed throughout the company, was "authorized" by that company); *Marceau v. Int'l Broth. of Elec. Workers*, 618 F. Supp. 2d 1127, 1143 (D. Ariz. 2009) (finding that the court "cannot conclude at this time" that an expert report was inadmissible hearsay); *Santana, Inc. v. Levi Strauss & Co.*, 674 F.2d 269, 275 n.1 (4th Cir. 1982) (noting that expert report of deceased expert "could" have been admissible pursuant to Rule 801(d)(2)(C)).

Report; *see, e.g.*, *Kirk*, 61 F.3d at 164. In other words, Plaintiffs hired Dr. Blair to provide his independent opinion, and not to provide Plaintiff's opinion. The Blair Report also specifically reserves Dr. Blair's right to amend, modify, or supplement his opinions as additional information becomes available such that it is unclear how Plaintiffs could authorize the particular statements where they are subject to change.

Further, the Blair Report is not sworn under oath, produced as part of the discovery process, or otherwise specifically relied upon by Plaintiffs in some manner. Rather, Plaintiffs produced the Blair Report pursuant to TCPRC § 74.351(a), requiring Plaintiffs to present an expert report regarding the Texas defendants' liability. As a result, it does not appear that Plaintiffs actually adopted the Blair Report -- the Blair Report is generally not admissible in the Texas action, is not to be used in deposition, trial, or other proceeding, and is not to be referred to by any party during the Texas Action. TCPRC § 74.351(k).[5]

In sum, these facts suggest to the court that Plaintiffs did not authorize Dr. Blair to make the particular statements in the Blair Report. Rather, the Blair Report provides Dr. Blair's independent opinions regarding Jessica's medical care;

---

[5] The court acknowledges that TCPRC § 74.351 is a procedural statute and therefore does not apply to federal actions, *see, e.g.*, *Estate of C.A. v. Grier*, 752 F. Supp. 2d 763, 770 (S.D. Tex. 2010). But it is nonetheless relevant in determining whether Plaintiffs truly authorized Dr. Blair to make the statements in the Blair Report, where Plaintiffs knew that it could not be used in the Texas action.

8

Plaintiffs may or may not ultimately adopt such statements as their own. The court therefore finds that Rule 801(d)(2)(C) does not apply to the Blair Report.[6]

### III. CONCLUSION

Based on the above, the court: (1) GRANTS Plaintiffs' Motion in Limine No. 7 to Exclude the Expert Report of Dr. Ron Blair, Doc. No. 1182; and (2) DENIES Dr. Sim's Motion in Limine Regarding Admissibility of Plaintiffs' Expert Report Disclosed in Proceeding in the County Court of Dallas County Texas, Doc. No. 1179.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 22, 2011.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Durham et al. v. County of Maui et al.*, Civ. No. 08-00342 JMS/RLP, Order (1) Granting Plaintiffs' Motion in Limine No. 7 to Exclude the Expert Report of Dr. Ron Blair, Doc. No. 1182; and (2) Denying Defendants James Y. Sim, M.D. and James Y. Sim, M.D., LLC's Motion in Limine Regarding Admissibility of Plaintiffs' Expert Report Disclosed in Proceeding in the County Court of Dallas County Texas, Doc. No. 1179

---

[6] This Order should not be construed as an absolute bar to any reference to the Blair Report during the course of the trial. If Defendants believe that Plaintiffs have opened the door to permit questions regarding the Blair Report, they should raise the matter with the court outside the presence of the jury.